PELICAN TRUCKING COMPANY *v.* ROSSETTI

No. 43153 October 19, 1964 167 So. 2d 924

38

*Dent, Ward, Martin & Terry,* Vicksburg, for appellant.

*Teller, Biedenharn & Rogers,* Vicksburg, for appellees.

ETHRIDGE, J.

Appellee, Floyd Rossetti, Jr., brought this action in the Circuit Court of Warren County against appellant, Pelican Trucking Company, Inc. (called Pelican). The court gave Rossetti a peremptory instruction on liability, and submitted to the jury both actual and punitive damages.

The principal question is whether the trial court was correct in allowing punitive damages, where the only

evidence to support them was that indicating a failure of defendant's driver to stop after its truck collided with plaintiff's parked car. We hold it was error to submit this issue, reverse the judgment of $1,500 for plaintiff which included punitive damages, and render judgment for him for compensatory damages only.

Cherry Street runs north and south in the city of Vicksburg. East Avenue intersects it at a right angle. Rossetti's home was situated on Cherry Street, at the southwest intersection of these two thoroughfares. His wife parked his 1960 Ford automobile in a proper manner alongside the east curb of Cherry Street, headed north, about 30 feet south of the intersection. Pelican's truck (tractor and trailer) was loaded with the straight leg of an oil derrick and steel superstructure, which overhung the rear of the trailer. Pelican's driver, Warwick, was traveling the regular truck route through the city, and as he turned west from Cherry Street into East Avenue he was traveling at about 3 to 4 miles per hour. In making this turn the protruding part of the derrick struck Rossetti's parked automobile, doing considerable damage to it.

If a motion picture camera were recording the incident, and it were stopped at this point, there would be only simple negligence. Warwick was driving slowly, not at an excessive rate of speed, and there was no evidence showing any willful and intentional wrong, or such gross negligence as would be the equivalent of a willful wrong. Teche Lines, Inc. v. Polk, 175 Miss. 393, 166 So. 539 (1936); Bush v. Watkins, 224 Miss. 238, 80 So. 2d 19 (1955); Planters Wholesale Grocery v. Kincade, 210 Miss. 712, 50 So. 2d 578 (1951).

After the collision, plaintiff's evidence tended to show that Warwick proceeded to drive west on East Avenue for almost a block without stopping, until a city garbage truck pulled beside him and asked him to stop. Rossetti ran out of his house, followed Pelican's truck down the

street, jumped on the running board, and asked Warwick if he did not know he had hit his car. Warwick replied he did not. Warwick denied this, and testified that he knew he struck Rossetti's car and stopped his truck as soon as he could park it on the side of the street, about halfway west on the block. In response to pretrial interrogatories, Pelican stated that Warwick advised it he did not know of the accident until someone told him. Another witness working at a nearby store supported plaintiff's version that the truck was finally stopped by a city vehicle. Rossetti also stated that, as he and and Warwick were walking back up the hill toward his car, Warwick said, "The only thing I hate about it (is) I am going to lose my bonus." Defendant's counsel did not object to this evidence of events transpiring after the collision, but were refused an instruction telling the jury it could not return any punitive damages.

■■ ■ *First.* It was error to permit the award of punitive damages to Rossetti. There was no evidence of excessive speed or any other factors reflecting such gross negligence as would indicate a reckless disregard of consequences. Apparently Warwick misjudged the distance between the derrick on his truck and Rossetti's automobile. It was simple, not gross negligence.

There are very few cases on this question. The rule seems to be that failure to stop after the accident is not of itself evidence sufficient to support punitive damages, but along with all the accompanying facts and circumstances of the accident may be used to show that that portion of defendant's conduct which constituted the proximate cause of the accident was willful and wanton or grossly negligent. Hallman v. Cushman, 196 S. C. 402, 13 S.E. 2d 498 (1941); Battle v. Kilcrease, 54 Ga. App. 808, 189 S. E. 573 (1936); Davis v. Gordon, 183 Md. 129, 36 A. 2d 699 (1944); Heath v. Kirkman, 240 N. C. 303, 82 S. E. 2d 104 (1954); see Anno., Failure to Stop or Other Conduct After Automobile Accident

as Supporting Claim for Exemplary Damages, 156 A. L. R. 1115 (1945); 61 C. J. S., Motor Vehicles, § 560, p. 664. The cited cases involve varying aspects of the foregoing rule, such as South Carolina's "Stop and Render Assistance" statute, Georgia's statute on punitive damages, and Maryland's restricted definition of exemplary damages.

■■■ The question is: To what extent is failure to stop after an accident acceptable evidence to support exemplary damages? The inquiry must originate with the quality of the act causing the damages. Where there are other circumstances immediately prior to and at the time of the collision which would tend to show gross negligence supporting exemplary damages in the act causing the damages, the actor's conduct occurring immediately after the happening of the accident may be relevant. In the present case the quality of the act causing the damages indicated no gross negligence. Accordingly, Warwick's conduct occurring immediately or closely after the collision was not sufficient evidence on the issue of his state of mind at the time of the accident to support a jury finding of punitive damages.

Ellis v. Pellegrini, Inc., 163 Miss. 385, 141 So. 273 (1932), cited by appellee, upheld punitive damages where defendant's truck backed into plaintiff's car, after he disregarded the blowing of plaintiff's horn and warnings from bystanders. Those were events which occurred immediately prior to and at the time of the collision. The present case has no similar circumstances contemporaneous with the time of collision.

■■ *Second.* As to compensatory damages, appellee's collision insurance covered all except the $50 deductible, which he paid and for which he sought recovery. Rossetti, an insurance salesman, had to drive several hundred miles a week in his car. He was entitled to damages for its loss of use or the rental value of a substitute motor vehicle.

He rented a substitute car for eight weeks at $50 per week from a national leasing agency. Appellant contends this was for an unreasonable period of time, relying upon Parsons v. Lambert, 209 Miss. 649, 48 So. 2d 143 (1950). That case involved repairs to a 1931 model automobile nineteen years after it was produced. The parts were no longer manufactured and most difficult to obtain. A delay for repairs of 125 days was unreasonable, too long under those peculiar facts to serve as basis of damages for loss of use. In the instant case, Rossetti's car was only two years old, and he sent it immediately to the local Ford dealer, who testified that because of the unusual nature of damages to the car (principally the top and left side), he had to obtain parts from three separate warehouses over the country, and the eight weeks period for repairs was reasonable under the circumstances.

■ ■ The period for which recovery may be had for loss of use is that which is reasonably required for the making of repairs, or that within which the vehicle could be repaired with ordinary diligence. ■ ■ One suing for damages is required to minimize his loss. ■ ■ The reasonableness of time consumed in making repairs depends largely on the circumstances of each case. It involves such factors as the ability of the repairman in ordinary course of business to secure the necessary parts. 8 Am. Jur. 2d, Automobiles and Highway Traffic, § 1048. The evidence shows the claimed period was justified. ■ ■ Rossetti is entitled to recover $400 compensatory damages for loss of use of vehicle for eight weeks, representing rental of the substitute vehicle for that period under the foregoing rules.

■ ■ Appellee cannot recover ten cents per mile for the 3,102 miles which he drove the rented automobile. There can be no recovery for the upkeep, gas and oil used in a rented vehicle, since the owner would have had the same depreciation and expenditures for his own

vehicle if it had not been damaged. 8 Am. Jur. 2d, Automobiles and Highway Traffic, § 1047; 25 C. J. S., Damages, § 83 c.

In summary, appellee cannot recover punitive damages. He is entitled to compensatory damages of $400 for loss of use of his automobile during repairs, and the requested $50 actually expended by him for the repairs. Costs of this appeal will be taxed against appellee.

Reversed and judgment rendered here for appellee in the sum of $450.

*Kyle, C. J., and Gillespie, McElroy and Brady, JJ.,* concur.

## ON SUGGESTION OF ERROR

ETHRIDGE, J.

Our original opinion correctly held that appellee could not recover punitive damages, but he was entitled to compensatory damages for loss of use of his automobile. However, we erred in limiting his compensatory damages for that factor to $400 (plus the requested $50 actually expended by appellee for repairs).

Without objection by defendant, the bill from Hertz Rent-A-Car, paid by Rossetti, was admitted in evidence. If defendant had objected on the ground that plaintiff must show its reasonableness and necessity, such objection should have been sustained, but none was made. Greyhound Corp. v. Townsend, 234 Miss. 839, 108 So. 2d 208 (1959), *suggestion of error sustained in part,* 234 Miss. 847, 108 So. 2d 853 (1959). Since defendant waived its right to demand such proof, the evidence thereon was proper for consideration of the jury.

That bill reflects a rental of $10 per day, 5 days per week for 8 weeks, $400. In addition, a "tax damage 4%" of $28.41; "collision damage waiver" of $20; and a charge of 10¢ per mile for 3,102 miles, $310.20. The total bill was $758.61.

 ██ In case of tortious injury to a motor vehicle, the owner may recover, in addition to an amount for the injury itself, the reasonable value of its use during the time the owner was necessarily deprived of it. National Dairy Products Corp. v. Jumper, 241 Miss. 339, 130 So. 2d 922 (1961); 8 Am. Jur. 2d *Automobiles and Highway Traffic* § 1047 (1963); 25 C.J.S. *Damages* § 83c (1941). ██ Moreover, damages for loss of use of a motor vehicle may be measured by the cost of hiring or renting another car while repairs are being made. The reasonable rental value of a similar vehicle is a measure of damages which has "the virtue of certainty and fairness." National Dairy Products Corp. v. Jumper, 241 Miss. at 344, 130 So. 2d at 923. ██ Further, the *Jumper* case held that the reasonable value of a replacement vehicle may be recovered, "even though no other was actually procured during the interval." 241 Miss. at 344, 130 So. 2d at 923.

 ██ With the evidence and these criteria in mind, it is apparent that the original opinion erroneously limited compensatory damages for loss of use to $400. On the present record, application of the test of reasonable rental value as a measurement for loss of use reflects actual damages to appellee in excess of that amount. They would include $400 for rental of the car ($10 per day, 5 days per week, for 8 weeks), plus $21.40 tax damage, plus $20 for collision damage waiver.

Two other questions arise: (1) Is appellee entitled to recover 10¢ per mile for 3,102 miles driven, or $310.20? Our original opinion correctly held that appellee could not recover for the upkeep, gas and oil used in the rented vehicle, since he would have had the same expenditures on his own car if it had not been damaged. Part of that 10¢ per mile may have covered gas and oil used in the rented car, but the record does not disclose to what extent this mileage fee represents the cost of gas and oil and to what extent it represents profit to

Hertz and rental cost to Rossetti. (2) Appellee is entitled to recover for the loss of use of his vehicle, even though no other car was actually procured during all or part of the repair interval. This was expressly held in *Jumper*. 241 Miss. at 344, 130 So. 2d at 923. Hence appellee can recover for loss of use of his own car not only for the five days per week during which he rented a substitute vehicle from Hertz, but also for the other two days of each week for which he was deprived of the use of his car by Pelican's tortious damage to it. However, appellee would have to show that he needed the car, in business or otherwise, in his reasonable and customary use of it.

In summary, appellee's suggestion of error is overruled in part, insofar as it pertains to the question of punitive damages. It is sustained in part, as to the amount of compensatory damages recoverable by appellee, and this case is reversed and remanded on the issue of compensatory damages only.

Suggestion of error overruled in part, and sustained in part, and reversed and remanded on the issue of compensatory damages only.

All Justices concur.