SUGG, Justice:
This is an appeal by the Watson Oil Corporation from a decree of the Chancery Court of Jefferson Davis County awarding Charles W. and Louise T. Cavanaugh damages in the amount of $1,776 against the Company. Watson was complainant and the Cavanaughs were defendants and cross-complainants in the suit in the Chancery Court.
Watson was engaged in exploratory drilling for oil and gas on the Cavanaugh property under a farmout agreement with Shell Oil Company, a lessee of the Cavan-aughs. Watson drilled a 17,000 foot Cotton Valley test on the land and abandoned the well as a dry hole. Cavanaugh and some of Watson’s agents discussed damages to Cavanaugh’s property after the well had been abandoned and while Watson was removing its drilling equipment from the well site, but no agreement was reached. On August 24, 1972 Cavanaugh erected a fence across a road leading to the well site because he had found one of *785 his cows in the road and because he did not want Watson Oil Corporation moving out since he had never heard of them and “nobody else had ever heard of Watson Oil Company.” Further negotiations were held between the Cavanaughs and Watson which resulted in the removal of the fence, but on August 31, 1972 Cavanaugh built another fence across the road leading to the well site.
Watson filed a bill of complaint on September 1, 1972 to enjoin the Cavanaughs from interfering with its ingress and egress to the well site. A temporary injunction was issued, the remaining equipment was removed, and the Cavanaughs filed their answer and cross-bill praying for damages in the amount of $5,000 and for restoration of their land and fences to their original state.
On final hearing the court dissolved the temporary injunction without damages and awarded compensation to the Cavanaughs on their cross-bill in the amount of $1,376 for damages caused by Watson to the growing crops, trees, fences and for restoration of the Cavanaugh pasture including cost of fertilizer and seed. The court found that Watson was guilty of negligence by allowing a drainage ditch to fill up, permitting drilling mud and oil to overflow into a catfish pond causing the death of catfish. Upon that finding the court allowed $400 damages for the loss of the catfish in the pond.
We affirm the award of damages except the $400 item allowed for the death of the catfish. We are of the opinion that the allowance of damages for this item is controlled by Shell Oil Co. v. Ainsworth, 247 So.2d 815 (Miss.1971).
Ainsworth brought suit against Shell charging that Shell had negligently allowed oil, salt and other chemicals to wash into a pond thereby killing 5,000 catfish, 100 bass and destroying the usefulness of the pond. Two jugs of pond water were anlayzed by a chemist who testified that the water was very alkaline, having a pH factor in excess of 9. The normal pH value of water is 7 and was 6j/£ in the area of the well. The chemist made no qualitative analysis to determine what chemicals caused the high pH factor and did not test the specific gravity of the water to determine the concentration of the dissolved substance in the water. The chemist further testified that the salt content in the water was within prescribed limits and that he had found a small amount of petroleum on the water. A fish and wildlife biologist testified that water with a pH value of 9 would kill fish and he further testified that before the pond could be re-used it would have to be drained and 2 inches of the bottom removed. The biologist did not think, however, that the petroleum content of the water was high enough to cause the death of the fish. We held that the plaintiff had failed to identify the chemicals in the water and had also failed to show that Shell was responsible for their being in the pond water, therefore, the evidence was not sufficient to take the case out of the realm of conjecture.
The evidence in the case at bar is not as strong as required in Ainsworth. There was no evidence that any deleterious substance, capable of killing the catfish, got into the pond. Further, no causal connection was shown between the influx into the pond of drilling mud and oil and the death of the catfish. In sum, the evidence presented by Cavanaugh on this issue was entirely circumstantial and did not rise above conjecture or speculation. We therefore reverse that part of the chancellor’s holding which assessed $400 against Watson for damage to the catfish and pond.
We turn to one final point. Watson argues that, due to the erection by the Cavanaughs of a fence which prevented the removal of drilling equipment from the well site, the oil company was required to pay a sub-contractor $871.50 for trucks and drivers while awaiting the removal of the fence. The record indicates that Watson’s field superintendent, upon learning that the fence had been erected, told the subcontractor not to allow his drivers to cross the *786 fence, but rather, to order them to sit there and wait. Watson knew that costs were being incurred by it as a result of this order. The oil company, therefore, failed to exercise due care or exert a reasonable effort to minimize its losses resulting from the erection of the fence. Consequently, Watson is not entitled to any compensation for costs incurred by idle trucks and drivers. Pelican Trucking Co. v. Rossetti, 251 Miss. 37, 167 So.2d 924 (1964); National Dairy Products Corp. v. Jumper, 241 Miss. 339, 130 So.2d 922 (1961).
For the reasons heretofore stated, the judgment of $1376 for damage to trees, fences, timber and growing crops is hereby affirmed. The allowance of $400 for damage to catfish and pond is hereby reversed. We commend the chancellor for itemizing his assessment of damages, thus allowing us to decide the case without the necessity of remanding the cause for a new trial on the issue of damages.
Affirmed in part, reversed in part and judgment entered for $1,376.
GILLESPIE, C. J., and PATTERSON, SMITH and ROBERTSON, JJ., concur.