Robert M. **BURAS** and Kathy C. Buras, Plaintiffs,

v.

**SHELL OIL COMPANY, Defendant.**

Civ. A. No. J86–0134(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

Feb. 6, 1987.

James D. Shannon, Hazlehurst, Miss., for plaintiffs.

Thomas M. Murphree, Jr. and Robert C. Boyd, Watkins & Eager, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause came before the court for trial and the court heard testimony from witnesses and reviewed exhibits admitted in evidence. The plaintiffs, Robert M. Buras and Kathy C. Buras, brought this action alleging that the defendant, Shell Oil Company (Shell), caused damage to plaintiffs' land, timber and cattle by negligent construction of a pipeline across plaintiffs' land and by use of land outside the right-of-way granted for construction of the pipeline. Upon a review of the evidence presented at the bench trial, the court makes the following findings of fact and conclusions of law.

On September 19, 1979, Shell obtained a right-of-way grant from W.C. Noland and Dianne Noland for the construction of a pipeline across the Nolands' property. The easement was properly recorded. The Nolands also executed a document entitled "Agreement as to Damages" (agreement) which provided for an advance payment by Shell of $1269 in full satisfaction of all damages which might arise in connection with the construction of the pipeline. This agreement was not recorded. On December 3, 1981, the Nolands conveyed property burdened by the easement to plaintiffs by warranty deed. Plaintiffs received title subject to the easement but without knowledge of the agreement.

The pipeline was constructed in the fall of 1984. Following completion of the pipeline construction on the Buras property, Shell graded the right-of-way area, constructed some berms or terraces to slow water run-off down sloping areas and seeded the right-of-way. Shell's restoration effort proved to be unsuccessful, however; because of the removal of topsoil during the pipeline construction, the growth of grass on the right-of-way was insufficient to stabilize the soil. Consequently, in the northeast and southwest parts of the right-of-way, serious erosion occurred, extending into areas outside the right-of-way.

Shell disclaims liability for the erosion, asserting that (1) plaintiffs are bound by the agreement executed by the prior owners and thus are limited to the $1269 liquidated damages provided for in the agreement, which Shell has already deposited for plaintiffs' benefit in a Hazlehurst bank; (2) Shell exercised due care and used proper procedures in the construction of the pipeline and reclamation of the right-of-way; and (3) plaintiffs failed to take reasonable steps to mitigate damages.

## AGREEMENT AS TO DAMAGES

Shell contends that the agreement which Shell entered into with the Burases' predecessors in interest is effective as to the Burases and that, since Shell has already deposited the amount specified in the agreement in a bank to the credit of plaintiffs, Shell is absolved of any further liability for damages to plaintiffs' property. Plaintiffs argue that since they had no actual or constructive notice of the agreement at the time the property was conveyed to them, they are not bound by that instrument. It is Shell's position that the agreement is enforceable against the Burases notwithstanding Shell's failure to have it recorded.

Shell cites 66 Am.Jur.2d, Records and Recording Laws § 170 (1973), to the effect that the failure to record an instrument not required to be recorded does not vitiate the instrument as to anyone, and it is valid as to subsequent purchasers without notice. Defendant argues that since Miss. Code Ann. § 89–5–7 provides that written contracts in relation to land *may be* recorded, such contracts are not required to be recorded and therefore are binding upon subsequent purchasers without recordation. However, the sentence in Am. Jur.2d preceding the one cited by defendant refers to instruments which must be recorded *in order to be effectual against*

*subsequent purchasers.* Whether recording of a given document is required for validity against subsequent purchasers depends on a particular state's statutes and court decisions. *See* 66 Am.Jur.2d, Records and Recording Laws § 54 (1973). Section 89–5–7's provision that contracts may be recorded is not reasonably construed to mean that contracts are not required to be recorded in order to effectuate them as to subsequent purchasers. Section 89–5–7 allows one who has entered a contract relating to land, which would otherwise not be binding on subsequent purchasers, to make the contract binding on subsequent purchasers by recording the instrument. The court is of the opinion that the meaning of section 89–5–7 is not that a contract relating to land is automatically binding on subsequent purchasers and a contracting party can then record or not as he wishes. It is, rather, that one can bind subsequent purchasers by obtaining recordation, in the same manner as conveyances of land can be made to be effective as to subsequent purchasers.

■ In order for the agreement as to damages to bind the Burases, it would be necessary that Mississippi statutes or case law provide that such an agreement would bind subsequent purchasers without being recorded. Shell has cited no such Mississippi case or statute. On the contrary, section 89–5–5 provides that every "conveyance, covenant, agreement, bond, mortgage, and deed of trust" shall take effect against subsequent purchasers for value without notice *only* from the time it is recorded. Furthermore, the provision of section 89–5–7 that recordation of a "written contract in relation to land" shall be notice to all subsequent purchasers, *i.e.*, shall be enforceable against subsequent purchasers, clearly indicates that, without such recording, the contract will not be binding.

An agreement such as the instrument in this case is similar to, and therefore should be treated the same as, restrictive covenants respecting land, which do not, in a true legal sense, run with the land, but are nevertheless enforceable in equity against subsequent purchasers who take title with notice. 20 Am.Jur.2d, *Covenants, Conditions, and Restrictions* § 304 (1965). Absent notice of a restrictive covenant, a purchaser takes free of it. Furthermore, allowing the Burases to acquire ownership free of the agreement if they had no notice of it is consistent with the purpose of the recording statutes, which place the burden on the one who could have protected himself but did not. Shell could have made the agreement enforceable against subsequent purchasers simply by having it recorded. Plaintiffs were entitled to rely on the land records. In light of the foregoing, and in view of the uncontradicted evidence that the Burases had no actual knowledge of the agreement, the court is of the opinion that the agreement is not binding upon plaintiffs and Shell cannot rely on it to avoid further liability.

## SHELL'S LIABILITY

■ Shell also defends on the ground that nothing negligent was done in the construction of the pipeline or reparation of the right-of-way. Two questions must be considered in regard to Shell's liability: (1) whether Shell can be held liable for damages in the absence of negligence; (2) if not, whether Shell failed to exercise reasonable care in construction of the pipeline and efforts to restore the right-of-way. The portion of the easement grant relevant to this inquiry states:

> SHELL, by acceptance hereof, agrees to bury the pipeline so it will not interfere with the ordinary cultivation of the land and also to pay any damages to growing crops, fences, buildings and timber on the land which may immediately and directly result from the exercise of the rights herein granted....

Because of the express agreement to pay for damage to crops, fences, buildings and timber, Shell is liable for such damages without regard to negligence in construction of the pipeline. *Transcontinental Gas Pipe Line Corp. v. Myrick*, 51 So.2d 475, 477 (Miss.1951). Robert M. Buras testified that Shell damaged or destroyed timber, causing damages of approximately

$200. Shell did not attempt to impeach his testimony as to the value of the timber and offered no contradictory evidence. The court finds that Shell is liable for damage to timber in the amount of $200.00.

 In undertaking to bury the pipeline so it would not interfere with the ordinary cultivation of the land, Shell assumed liability for interference with cultivation not only on the right-of-way but also on lands adjacent to the easement. Such interference includes erosion and destruction of the topsoil. *Myrick*, 51 So.2d at 477. However, no damages may be recovered for destruction of topsoil on the right-of-way unless it is shown that this destruction was unnecessary in the proper construction of the pipeline or amounted to negligence. Destruction of topsoil on the adjacent lands is compensable without reference to negligence. Damages for erosion caused by construction of the pipeline, whether on or off the right-of-way, may also be recovered despite the exercise of due care in construction. *See Transcontinental Gas Pipe Line Corp. v. Hill*, 55 So.2d 170, 171, *sugg. of error overruled*, 57 So.2d 162 (Miss. 1952); *Myrick*, 51 So.2d at 477.[1]

Plaintiffs offered no evidence as to damages directly caused by removal of the topsoil. Thus, the destruction of topsoil would be relevant only to the extent that it contributed to the erosion because of the remaining soil's inability to sustain sufficient growth of grass to hold the soil in place. Since Shell is liable for erosion damage without regard to its lack of due care, the court need not decide between the conflicting expert testimony as to whether Shell's destruction of the topsoil comported with proper construction procedures.

 The court is of the opinion that, based on Shell's agreement not to interfere with the ordinary cultivation of the land, Shell is liable for damages caused by the erosion on the right-of-way and adjacent lands. Where damage to land is temporary and subject to restoration, the proper measure of damage is the cost of restoration. *Sun Oil Co. v. Nunnery*, 251 Miss. 631, 170 So.2d 24, 31–32 (1964). The parties agree that the erosion damage at issue in this case is repairable. Consequently, the court finds that the measure of damages caused by the erosion is the cost of restoring the eroded areas substantially to their former condition and in some manner preventing the recurrence of the erosion. Plaintiffs' expert witness, Edwin K. Dedeaux, testified that restoration would require filling of gulleys and rivulets, site grading, and seeding and mulching of the affected areas. This testimony was not contradicted by defendant's evidence, except that one of Shell's expert witnesses, Jim Gross, testified that restoration might be possible without the use of earth fill. Defendant does dispute, however, plaintiffs' contention that, in addition to the previously enumerated restoration procedures, nylon matting and solid grass sod are needed to stabilize the soil and prevent erosion before a stand of grass has been established. Gross opined that the use of grass sod would be unnecessary and would

---

1. Damages for erosion on the right-of-way are recoverable even in the absence of negligence because Shell expressly agreed not to interfere with ordinary cultivation and thus assumed liability for any erosion which did so interfere. *See Myrick*, 51 So.2d at 477. However, the court in *Hill* excluded damage to topsoil from the range of recovery that could be had without a showing of negligence or lack of necessity. The rationale for this distinction would seem to be that, although destruction of the topsoil apparently would interfere with ordinary cultivation, it would not have been within the contemplation of the parties that the constructor would covenant to compensate for it regardless of negligence, because it is unavoidable. By contrast, erosion would not be a necessary result of pipeline construction.

Although the land subject to the easement was used for pasture rather than for growing crops, the court is of the opinion that the term "cultivation" encompasses the growing of grass for consumption by cattle. Furthermore, in *Myrick* the court held that evidence that pipeline construction had resulted in difficulty in tilling the lands and had impeded access from one side to the other would sustain a finding that there had been an interference with cultivation. Here, the evidence established that the erosion was such that vehicles could not drive across the affected areas. Thus, the land in its present state is not amenable to growing crops, should the plaintiffs desire to use the land for that purpose. Accordingly, the court concludes that plaintiffs may recover for damages which they can prove resulted from erosion.

in fact be inappropriate inasmuch as grazing cattle would destroy the sod. Defendant's experts also testified that the soil stabilization afforded by nylon matting and sod could be achieved by alternative methods, such as distributing hay on the surface of the soil or the use of silt screens, at considerably less cost than would be incurred in the use of nylon matting and sod. Defendant's experts did not dispute plaintiffs' evidence that something was necessary to hold the soil in place until a stand of grass was established, but did testify that the nylon ·matting was not essential since there were other methods of stabilizing the soil which were considerably less costly. However, Shell's experts did not contradict plaintiffs' evidence that use of nylon matting was the best method of stabilizing the soil. In addition, Shell's experts did not testify as to the cost or relative efficacy of the alternatives they suggested. In the absence of this information, the court cannot pull figures out of the air and is unable to weigh the proposed alternatives against the use of nylon matting. Consequently, the court finds that the use of nylon matting is a reasonable procedure for restoration of the steep slopes in question and plaintiffs may recover the cost thereof as part of their damages.

In regard to the grass sod, it appears from the testimony of Dedeaux that the function of the sod is essentially the same as that of the nylon matting. The testimony of defendant's expert Gross was that sod would be inappropriate in an area where cattle are grazing. In view of this evidence, the court finds that the cost of grass sod is not properly an element of plaintiffs' damages.

Based on the evidence presented by the plaintiffs as to the cost of the items necessary to restore the eroded areas and the lack of contradictory evidence from the defendant, the court finds that plaintiffs are entitled to recover $1560 for earth fill, $1110 for seeding and mulching and $9800 for nylon matting.

Plaintiffs also claim damages for the amount estimated to be required for maintenance of the restored areas. They introduced evidence that the establishment of vegetation in erosion control often requires continual attention over an extended period of time, including replanting of seeds where grass does not come up, correction of minor erosion and watering of the soil if rainfall is insufficient. The court finds that these claimed damages are too speculative. Consequently, the plaintiffs may not recover the projected costs of maintenance as an element of damages.

Shell asserts that, in the event that Shell is found to be liable for the erosion, plaintiffs' recovery must be limited to the sum which would have been required to correct the erosion when it first began, because plaintiffs failed to take reasonable steps to mitigate damages. It is true that a person injured by a tort or breach of contract is required to take reasonable steps to mitigate his damages, and his failure to do so prevents him from recovering for damages which could have been avoided through reasonable efforts. *See Pelican Trucking Co. v. Rossetti,* 251 Miss. 37, 167 So.2d 924, 927 (1964); *Levy v. J.A. Olson Co.,* 237 Miss. 452, 115 So.2d 296, 298 (1959); 25 C.J.S. *Damages* § 33 (1966). His duty includes making reasonable expenditures toward avoiding further damage; however, he is not required to make extraordinary expenditures to diminish the harm caused by the act of the party at fault. 25 C.J.S. *Damages* § 33 (1966). The court notes that Robert M. Buras distributed rye grass seed, fertilizer and lime on the right-of-way in an effort to halt further erosion. Shell's expert witness Gross conceded that this was a proper effort to prevent additional erosion. The court finds that plaintiffs made a reasonable effort to mitigate damages. It appears that successful prevention of further erosion would have required essentially the same procedures as those now needed to restore the land, except that less earth fill would have been required at that time. The court finds that the cost of performing those procedures was in excess of what plaintiffs should reasonably have been required to expend in an attempt to mitigate damages. Furthermore, where the party at fault and

the injured party have equal opportunity to reduce the damages by the same means, and equal knowledge of the consequences of failing to act, the defendant may not diminish his liability by contending that the injured party failed to mitigate damages. In other words, a damage award will not be reduced on account of damages which the defendant could have avoided as easily as the plaintiff. *Shea-S & M Ball v. Massman-Kiewit-Early*, 606 F.2d 1245, 1249 (D.C.Cir.1979); 25 C.J.S. *Damages* § 34 (1966). The court finds that Shell had the same opportunity to act at an earlier date and the same knowledge of the consequences of failing to do so as the plaintiffs. Accordingly, Shell is not entitled to a reduction in the damages to which plaintiffs are entitled because of a failure to mitigate.

Plaintiffs also seek to recover for damage to a gravel road and to a telephone line and for the loss of a cow. These are not within the scope of the damages for which Shell expressly covenanted to pay in the easement grant; therefore, plaintiffs may recover for them only upon proving that Shell negligently caused the damage claimed.

■ The Burases claim that Shell's faulty methods of construction resulted in damage to a gravel road on the property. However, plaintiffs failed to produce evidence showing what, if anything, Shell did wrong with respect to the road. Therefore, the court concludes that plaintiffs did not sustain their burden of proving that the damage to the road was caused by Shell's negligence. Accordingly, plaintiffs may not recover the cost of repairing the road as an element of damages.

■ Plaintiffs also allege that Shell cut a telephone line during digging operations. The court finds that Shell, through reasonable efforts, could have ascertained the presence of the underground telephone line. Consequently, the court concludes that Shell was negligent in severing the line and is liable for the resultant damages. Robert M. Buras testified that he was in-

formed that it would cost $1180 to run a new phone line to replace the one which Shell cut. Defendant failed to object to this testimony and did not cross examine him on this point. In addition, Shell offered no evidence that the telephone line could be repaired or replaced at a lesser cost. In the absence of Shell's contesting the amount of damages sustained as a result of the line's being cut, the court concludes that plaintiffs sustained damages in the amount of $1180 as a result of the severance of the telephone line.

■ Plaintiffs further allege that one of their cows fell into one of the deep erosion gullies and suffered a broken leg, which made it necessary to have the cow shot. The evidence showed that, after the initial efforts at restoration of the right-of-way, Shell did nothing further to repair the erosion damage or prevent further erosion despite having the knowledge that erosion had taken place and would doubtless become worse. Therefore, the court concludes that, notwithstanding any lack of negligence in Shell's original reclamation effort, Shell was negligent in failing to take remedial steps to correct the erosion problem.[2] The court further concludes that, since the pipeline easement was upon land used for pasture, such injury to cattle was reasonably foreseeable by Shell. Accordingly, Shell is liable for damages which plaintiffs suffered by the loss of the cow. Robert M. Buras testified that the cow was worth $400 and Shell offered no contradictory evidence. Therefore, the court finds that the plaintiffs are entitled to $400 for the loss of the cow.

■ Plaintiffs also charge that Shell used land outside the sixty-foot temporary work area provided for in the easement grant, and seek to recover damages purportedly resulting from this excess use. Defendant relies on a typed provision added to the right-of-way grant which gives Shell the right to use such additional land as may be reasonably necessary as work-

---

**2.** Thus even if damage to pasture land were not within the scope of Shell's covenant not to interfere with cultivation, *see supra* note 1, Shell

would nevertheless be liable for the erosion damage because of negligence.

ing space in the construction of the pipeline. The court finds that plaintiffs have failed to meet their burden of proving that Shell's use of lands outside the sixty-foot right-of-way was not reasonably necessary. In addition, plaintiffs did not prove any damages not otherwise compensable resulting from any use outside the sixty-foot right-of-way. Therefore, plaintiffs are not entitled to recover damages for Shell's use of lands outside the right-of-way.

■ Plaintiffs also seek punitive damages. The court finds that Shell's actions were not willful or grossly negligent, and hence concludes that plaintiffs are not entitled to recover punitive damages. A similar conclusion is compelled on plaintiffs' claim for damages for mental distress. The extent of plaintiffs' proof of mental distress was that Robert M. Buras was angry and upset and occasionally awoke early in the morning and could not go back to sleep. He received no medical treatment or psychological counseling. Consequently, the court concludes that plaintiffs may not recover on this claim.

Accordingly, the court finds that plaintiffs should recover from defendant the sum of $14,250.[3] Defendant is entitled to credit against this award for the $1269 deposited in the Merchants & Planters Bank, Hazelhurst, Mississippi, to the credit of the Burases. A separate judgment shall be submitted in accordance with Federal Rule of Civil Procedure 58.

---

**3.** $200 for damage to timber, $1560 for earth fill, $1110 for seeding and mulching, $9800 for nylon matting, $1180 for damage to the telephone line, and $400 for loss of plaintiffs' cow.