HWY. 7 EMBERS, INC., Appellant,

v.

NORTHWESTERN NATIONAL BANK and Charles Koehler, Executors of the Estate of G. F. Lohman, Respondents,

Nella D. Lohman, et al., Respondents,

Newcomb Brothers Nursery, Inc., Defendant.

Nos. 46710, 46711.

Supreme Court of Minnesota.

June 24, 1977.

Rehearing Denied Aug. 9, 1977.

Maslon, Kaplan, Edelman, Borman, Brand & McNulty and Hyman Edelman, Minneapolis, for appellant.

Taylor Law Firm and Elmer W. Foster, Minneapolis, for Lohman, et al.

Lewis E. Lohmann and Paul W. Lohmann, Minneapolis, for Lohman Heirs.

Heard before YETKA, SCOTT and WINTON, JJ., and considered and decided by the court en banc.

SCOTT, Justice.

This is an appeal from a judgment denying declaratory and injunctive relief and damages to plaintiff, Hwy. 7 Embers, Inc. (Embers). The matter at issue is the extent of an easement of view over property owned by G. F. Lohman [1] and defendant Nella Lohman (Lohmans) and leased by defendant Newcomb Brothers Nursery, Inc. (Newcomb). Trial was to the court, which held that defendants' interpretation of the easement was correct. Embers appeals from that decision.

The facts in this case are best understood by reference to the following diagram:

---

1. G. F. Lohman died subsequent to the beginning of this action and executors of his estate were made parties.

Initially, the Lohmans owned all of Tracts B, C, and D as shown above. To summarize a fairly complicated series of transactions, the Lohmans sold Tract D to the Phillips Petroleum Company (Phillips) as a location for a service station and Tract C to Embers as a location for a restaurant. It was thought by all parties at the time (1968) that Tract B would be condemned to permit construction of a major traffic interchange at State Highway No. 7 (Highway 7) and Monk Avenue. The warranty deed from the Lohmans to Embers included an easement agreement, the meaning of which forms the central dispute in this case.

The highway interchange has not yet been constructed (nor does the record show that it has been abandoned), leaving the Lohmans in continued possession of Tract B. Newcomb leased Tract B for its nursery business, but it is now bankrupt and has discontinued business on the Lohman property. The Lohmans wish to sell Tract B to buyers who intend to construct a new building on its eastern portion, thus restricting the view of Embers from the northeast on Highway 7. Embers contends that the easement agreement prohibits such buildings on all of Tract B, while the Lohmans take the position that only the western portion of Tract B is affected by the easement.

The following legal issues are presented:

(1) Does Embers possess an express easement of view over all of Tract B?

(2) Does Embers possess an implied easement of view over all of Tract B?

(3) Was it the equitable duty of the trial court to find a reasonable easement of view for Embers over all of Tract B?

(4) Are the Lohmans equitably estopped from claiming a right to build on the eastern part of Tract B?

1. The warranty deed conveying Tract C to Embers contains an easement agreement which provides in relevant part:

"Parties of the first part, agree on behalf of themselves, their heirs, successors and assigns, that they will not erect any buildings, structures of any sort or signs on any property adjacent to and immediately North of Tract C, Registered Land Survey No. 1241, *lying west of the northerly extension of the boundary line between Tracts C and D,* said Registered Land Survey No. 1241, and South of the Southerly right of way line of State Highway No. 7 as presently located, and on any property presently owned by them North of the North line of said Tract C extended in a Westerly direction and South of the Southerly right of way line of State Highway No. 7 as presently located, which agreement shall run with the land and be binding upon parties of the first part and any successor owner of said property. Provided, however, that parties of the first part shall have the right to use Tract B lying West of the Northerly extension of the boundary line between Tracts C and D, said Registered Land Survey No. 1241, for single level ground parking of automobiles with no requirement of buildings or structures. It is understood and agreed that the interest of party of the second part in said property to the North of said Tract C and other property as herein described is in the preservation of visibility of and accessibility to said Tract C, and that party of the second part shall have no interest in any condemnation awards or payments made to parties of the first part for the acquisition of said property. To the extent that the visibility of and accessibility to said Tract C may be impaired by the erection and construction of anything other than an interchange with the necessary grade separations and signs incidental to the construction of said separation or interchange, party of the second part reserves all rights which it may have to claim or recover compensation for loss thereof or interference therewith from the State of Minnesota or from any other governmental body." (Italics supplied.)

Embers also points to the earnest money contract between it and Phillips, the ease-

ment conditions of which were later assumed by the Lohmans. The easement provision states:

"Lohmans shall agree on behalf of themselves, their heirs, successors and assigns, that they will not erect any buildings, structures of any sort or signs on any property adjacent to and immediately north of Parcel 2 presently owned by them and on any property presently owned by them north of the north line of Parcel 2 extended in a Westerly direction, which agreement shall run with the land and be binding upon the Lohmans and any successor owner of said property. It will be understood and agreed that Buyer's interest in said property to the north of Parcel 2 and other property as herein described is in the preservation of visibility of and accessibility to Parcel 2, and that Buyer shall have no interest in any condemnation awards or any payments made to the Lohmans for the acquisition of said property except as to the extent that the visibility of and accessibility to Parcel 2 may be impaired by the erection and construction of anything other than an interchange with the necessary grade separations and signs incidental to the construction of said separation or interchange."

Embers contends that proper construction of these documents yields an express grant of an easement of view over all of Tract B. The Lohmans and the trial judge reached the conclusion that an express easement extended over only part of Tract B.

■ In Annotation, 142 A.L.R. 467, 468, it is stated: "It is universally assumed, without controversy, that easements of light, air, and view may be created by express grant." When an easement is by express grant, its extent depends entirely upon the construction of the terms of the grant. 28 C.J.S., Easements, § 78; Annotation, 142 A.L.R. 467, 469; Restatement, Property, § 482; 3 Powell, Real Property, § 415. Only when ambiguities exist may

the circumstances surrounding the grant be considered. As the language of the grant becomes less precise, the circumstances of the grant grow in importance as an interpretive aid. Restatement, Property, § 483, *Comments d* and *e*; 3 Powell, Real Property, § 415.

■ First resort, then, must be had to the language of the easement to see if it can reasonably be interpreted as granting an easement of view to Embers over all of Tract B. The relevant portion of the easement agreement refers to—

"* * * any property adjacent to and immediately North of Tract C * * lying west of the northerly extension of the boundary line between Tracts C and D * * * and South of the Southerly right of way line of State Highway No. 7 as presently located, and on any property presently owned by them North of the North line of said Tract C extended in a Westerly direction and South of the Southerly right of way line of State Highway No. 7 as presently located * * *."

The first part of the phrase refers to the large portion of Tract B immediately north of Tract C; the second part refers to the small portion of Tract B which extends slightly to the west of the larger area. No reference is made to that portion of Tract B lying immediately north of Tract D. Thus, the provisions of the easement agreement refer specifically to that part of Tract B lying west of the northerly extension of the boundary line between Tracts B and C.

Embers contends, however, that the following language in the easement agreement indicates an extension of the easement:

"* * * It is understood and agreed that the interest of party of the second part in said property to the North of said Tract C *and other property as herein described* is in the preservation of visibility of and accessibility to said Tract C,

and that party of the second part shall have no interest in any condemnation awards or payments made to parties of the first part for the acquisition of said property." (Italics supplied.)

Noting that "other property" is not defined in the easement agreement, Embers would turn to the easement provision of the earnest money contract set out above. This provision is substantially the same as that in the easement agreement and again refers to "other property as herein described." The easement provision of the earnest money contract, however, refers at the outset to the Lohmans as "owners of the property on the North, West and South borders of Parcel 1 [Tract D] and Parcel 2 [Tract C]." Embers argues that this is the "other property as herein described" of both the easement agreement and the earnest money contract and that this obviously includes all of Tract B.

This is an inventive line of argument, but it must fail for two reasons. First, the sections wherein the "other property" phrases are found are intended to limit Embers' interest in those parts of the Lohman property over which it has an easement to "the preservation of visibility and accessibility," thus preserving full condemnation rights for the Lohmans. These sections are plainly not intended to extend the easement just described by far more specific language. Second, the phrase "other property as herein described" refers to that part of the easement *not* immediately north of Tract C (Parcel 2), namely, the small part of Tract B to the west, which does not come under the phrase "said property to the North of said Tract C." This is especially true since the following two pieces of property have just been described: (1) The property immediately north of Tract C and (2) the property north of the northerly line of Tract C extended *west.* If it had been intended at this point to include all of Tract B, including that to the northeast of Tract C, surely more specific language would have been used.

The foregoing considerations led the trial judge to conclude that the language of the easement was "clear and unambiguous." This conclusion is fully warranted by the express terms of the easement agreement and the earnest money contract. These documents cannot reasonably be read to grant an express easement of view over the eastern portion of Tract B, as Embers contends.

2. Easements of view may be created by implication. 28 C.J.S., Easements, § 42. The majority view is, however, that they will not be implied "where an intention to create them does not clearly appear." *Id.,* p. 707. Numerous factors may be considered to determine whether an easement by implication has been created. Restatement, Property, § 476; 3 Powell, Real Property, § 411. The terms of the conveyance, however, may always negate an implication drawn from other circumstances. Restatement, Property, § 476, *comment d.* Combining the substance of Restatement, Property, § 483, *comment e,* and Restatement, Property, § 476, *comment d,* yields the following rule: The circumstances surrounding a conveyance may permit the inference of an implied easement, but this inference may be overcome by the terms of the conveyance itself.

Embers points to the fact that both the Lohmans and itself expected the highway interchange to be built, resulting in condemnation of Tract B and automatic visibility for Embers. From this, Embers concludes that "all the parties intended there to be reasonable visibility from Embers to Hwy. 7." This might well have been true, had the interchange in fact been built. In that case, the Lohmans would have their condemnation award, and this dispute would not have arisen. Because the interchange has not yet been built, however, the Lohmans are still in possession of their land.

An examination of the terms of the easement agreement refutes the implication of

an easement over the eastern part of Tract B. The agreement speaks specifically of "property adjacent to and immediately north of Tract C * * * lying west of the northerly extension of the boundary line between Tracts C and D." This indicates a clear intent to divide Tract B into two parts, with the easement being over the western part. The easement agreement goes on to allow the Lohmans to use this western part for "single level ground parking of automobiles with no requirement of buildings or structures." Again, if any intention existed to restrict the Lohmans' use of the eastern part of Tract B, it would have appeared at this point as well.

The nub of the issue is this: Both parties expected an event which has not yet occurred and did not provide for its nonoccurrence in their written agreement. Had they anticipated the nonoccurrence, they would have realized that either the Lohmans would be left with next-to-useless property, encumbered by an easement severely restricting its use, or Embers would suffer some loss of visibility from Highway 7. Since the express terms of the conveyance do not permit an extension of the easement by implication and since the nonoccurrence cannot raise an implication in favor of either party, no easement may be implied under the rule that an easement of view may not be implied absent a clear intention to do so. 28 C.J.S., Easements, § 42.

■ 3. Embers cites the case of *Ingelson v. Olson,* 199 Minn. 422, 429, 272 N.W. 270, 274 (1937), for the proposition that a court in equity has power to determine a fair extent of an easement when the parties are unable to agree. That case, however, involved a situation where a roadway easement was described by such terms as "approximately" and "more or less," and the parties could not agree on a more exact description. The court held that in such a case a court of equity could step in to locate

a reasonable route and thus settle the dispute.

The present case is unlike *Ingelson* in that the written description herein is capable of exact interpretation. While Embers has raised a line of argument tending to show that all of Tract B is included in the easement, it does not seriously contend that the agreement is so vague that any reasonable view for Embers is a possible interpretation. The fact that the parties cannot agree does require that the court decide for them, but the court is not free to create any reasonable easement when the agreement does not permit such flexibility. Under *Ingelson* the equitable powers of the court are called into play only when the description of the easement is sufficiently vague as to permit the inference that any reasonable easement was intended. That is not the case here. This easement either extends over all of Tract B, or it does not. This is an interpretive question and does not call upon the equitable powers of the court.

■ 4. Powell states that an easement may arise by estoppel in the following manner:

" * * * When a grantor conveys part of his land to a grantee with knowledge of the latter's intended use of the land so conveyed, and the use so intended necessarily involves some curtailment of the grantor's use of his retained land, an easement arises in favor of the grantee as against the grantor. The grantor is estopped to deny that the grantee acquired the necessary easement. Similarly, when a vendor represents to his purchaser that the land sold will be served by an easement over reserved land of the vendor, the vendor is estopped to deny the existence of such easement although it is unmentioned in the conveyance." 3 Powell, Real Property, § 411, p. 464.

This doctrine has been recognized by other authorities as well. 3 Tiffany, Real Property, § 801; 2 Thompson, Real Property (1961

Replacement), § 357. The gist of the doctrine is that if a vendor who has reserved some property to himself represents to the vendee that he will have an easement over the vendor's property as part of the sales transaction, the vendor may be later estopped from denying the easement. The key requirement is that of "representation"; Tiffany refers to the doctrine as "estoppel by representation, by means of conduct of a particular character." 3 Tiffany, Real Property, § 801, p. 318.

Since this case does involve a vendee's claim of easement over a vendor's reserved land, the question is whether the Lohmans represented to Embers that it would have an easement of view over all of Tract B, in the event the interchange was not constructed. Of course, the record does not disclose that the interchange will not be constructed sometime in the future, and the contract contains no time limit. Therefore, this action might even be questioned as being premature.

■ Embers does not contend that the Lohmans guaranteed the interchange but does assert that the Lohmans guaranteed Embers' complete visibility from Highway 7 until the interchange was built. There is no evidence in the record to support this assertion. There is little doubt that the Lohmans were aware of Embers' desire for visibility from Highway 7—this was the purpose of the easement provisions in the earnest money contract and the warranty deed. As has been stated, however, this express easement cannot be used as a basis for an easement by estoppel over land not within its terms. The "visibility" clauses of the two documents were intended to preserve the Lohmans' condemnation rights and cannot be extended further. There was no testimony offered at trial indicating that the Lohmans or their attorneys represented to Embers that their easement of view extended beyond the terms of the written documents. It may be assumed that Embers did not actively pursue such an extension because of its belief that the interchange would soon be built. This "lack of conduct" by either party with respect to the eastern portion of Tract B, however, cannot be converted into a "representation" by the Lohmans that Embers had an easement over this property.

■ Embers attempts to show that all the equities are on its side. This is not the case. The express easement gives Embers full visibility from Highway 7 from the west and north, and from Monk Avenue past the Phillips station. The proposed building would not by any means obscure the view of Embers from the north and west and, as pointed out by the Lohman heirs, a new business on the corner might well counterbalance whatever loss of business Embers might suffer from loss of visibility. The law does not favor such undue burdens on property absent a clear intention to create them. 6A Dunnell, Dig. (3 ed.) § 2852; 28 C.J.S., Easements, § 42. Embers bargained for and received an express easement over a part of the Lohmans' remaining property. The equities do not balance so heavily in favor of Embers as to require an extension of that express grant.

The trial court is therefore affirmed in all respects.

Affirmed.