**BERGH AND MISSON FARMS, INC., Respondent,**

v.

**GREAT LAKES TRANSMISSION COMPANY, a Limited Partnership, Petitioner, Appellant.**

No. C8–96–603.

Supreme Court of Minnesota.

June 19, 1997.

---

Rajkowski, Hansmeier, Ltd., Gordon H. Hansmeier, Bridget M. Lindquist, St. Cloud, for appellant.

Bassford, Lockhart, Truesdell & Briggs, P.A., Charles E. Lundberg, Timothy S. Mangan, Minneapolis, for respondent.

## OPINION

PAGE, Justice.

Respondent Bergh and Misson Farms, Incorporated ("B & M"), along with Arlo and Dorothy Bergh ("the Berghs"), commenced this action against appellant Great Lakes Gas Transmission Company ("Great Lakes") alleging that Great Lakes negligently and intentionally trespassed upon property leased by B & M from the Berghs and, in the process, caused damage to the property and a sugar beet crop growing on it in the amount of $75,000. In its answer, Great Lakes denied that it had trespassed on the property and affirmatively alleged that its

conduct was permitted by an agreement between the parties. At trial, B & M sought treble damages for trespass pursuant to Minn.Stat. § 548.05 (1996). B & M also sought to introduce evidence that the route selected by Great Lakes to access a pipeline easement through the field, held by Great Lakes, was unreasonable. The trial court refused to submit an instruction on trespass to the jury, and, based on the language of the pipeline easement granted to Great Lakes by the Berghs, refused to permit B & M to introduce evidence on the reasonableness of Great Lakes' actions. The jury returned a verdict for property damage against Great Lakes in the amount of $19,165. B & M appealed, and a divided court of appeals, in an unpublished opinion, reversed and remanded for a new trial. The court of appeals panel majority, finding that a reasonable jury could have found that Great Lakes' route of access to the pipeline was not necessary, was unreasonable, and caused unnecessary harm to the field, concluded that the trial court erred both when it excluded evidence of the reasonableness of Great Lakes' actions and when it did not instruct the jury on trespass. We reverse the court of appeals and reinstate the jury's verdict.

The Berghs lease farm property (the field) in Clow Township, Kittson County, Minnesota, to B & M. Great Lakes has a pipeline easement running through the field.[1] Great Lakes originally acquired the pipeline easement from the Berghs by way of a "right-of-way agreement" dated June 18, 1970. The pipeline easement runs through approximately 2,400 feet of the field and is 125 feet wide. The pipeline, which is 36 inches wide, is underground, and the right-of-way agreement provides that the "pipeline shall be buried at a sufficient depth so as not to interfere with normal tilling methods * * *." On September 11, 1990, the right-of-way agreement was redrafted and the location of the easement was more specifically defined. In both the 1970 and the 1990 right-of-way agreements, the Berghs granted Great Lakes:

an easement and right-of-way to survey, clear and excavate for, lay, construct, operate, inspect, maintain, protect, repair, replace, alter, change the size of, or remove a pipeline or pipelines and appurtenances, at any time or times, for the transportation of gas and other substances which can be transported through the pipeline * * * with the right of ingress and egress to and from said right-of-way * * * so long as the same is used for any of the purposes herein granted.

Each of the right-of-way agreements allowed Great Lakes to "temporarily use work space as needed during the construction, operation, maintenance, and removal of said pipeline or pipelines" and required Great Lakes to pay for any resulting "damages to crops, timber, livestock and improvements * * *."

In 1994, Great Lakes determined that a 350-foot section of the pipeline buried within the pipeline easement needed recoating. The project required Great Lakes to excavate, sandblast, coat, and rebury that section of the pipeline. Great Lakes did not seek consent from either B & M or the Berghs on whether it could enter the field to recoat the pipeline, nor did Great Lakes seek direction from either B & M or the Berghs on how to access the repair site within the pipeline easement.

Great Lakes recoated the pipeline between June 14 and July 29, 1994, and, in the process, brought two bulldozers, a backhoe, and a pickup truck onto the field. During the time Great Lakes was working on the pipeline, approximately 12 to 15 inches of rain fell in the area. At the end of each work day, Great Lakes removed its equipment from the field to avoid potential water damage and vandalism. Some days, the rainfall was so heavy that Great Lakes was unable to get its equipment to the repair site. B & M claims that the route Great Lakes chose to access the repair site caused dirt to clog the field's drainage ditches, which, in turn, caused water to back up on the field, damaging the sugar beet crop that was growing there. Great Lakes admitted that its recoating pro-

---

1. Great Lakes transports natural gas by pipeline from Canada through Minnesota, Wisconsin, Michigan, and back to Canada.

ject damaged 1.14 acres of the sugar beet crop located within the easement, but disputed B & M's claim that all of the water which backed up on the field was attributable to their work.

The issue presented by this case is whether the trial court erred when it excluded evidence of the reasonableness of Great Lakes' actions in accessing the pipeline easement to recoat the pipeline and when it withheld the issue of trespass from the jury. A trial court possesses broad discretion over the admission and exclusion of evidence and the trial court's rulings should not be disturbed by a reviewing court unless the rulings constitute a clear abuse of discretion or are based on an erroneous view of the law. *Uselman v. Uselman*, 464 N.W.2d 130, 138 (Minn.1990) (citation omitted). The parameters of an easement created by a grant "depends entirely upon the construction of the terms of the grant." *State by Wash. Wildlife Preservation v. State*, 329 N.W.2d 543, 546 (Minn.), *cert. denied*, 463 U.S. 1209, 103 S.Ct. 3540, 77 L.Ed.2d 1390 (1983) (citation omitted). *See also Minneapolis Athletic Club v. Cohler*, 287 Minn. 254, 258, 177 N.W.2d 786, 789 (1970) ("[T]he extent of the easement created by a conveyance is fixed by the terms of the conveyance.") (citing Restatement of Property § 482). Generally, an easement grant is to be strictly construed against the grantor. *Romanchuk v. Plotkin*, 215 Minn. 156, 160, 9 N.W.2d 421, 424 (1943). When the terms of an easement grant are unclear, extrinsic evidence may be used to aid in the interpretation of the easement grant; however, when the language granting the easement is clear and unambiguous, the court's power to determine the extent of the easement granted is limited. *Highway 7 Embers, Inc. v. Northwestern Nat'l Bank*, 256 N.W.2d 271, 276–77 (Minn.1977). "It is well settled that the extent of an easement should not be enlarged by legal construction beyond the objects originally contemplated or expressly agreed upon by the parties." *Minneapolis Athletic Club*, 287 Minn. at 258, 177 N.W.2d at 789–90 (citations omitted). If an easement holder expressly agrees to pay for damages to the servient property as a result of exercising the rights under the easement grant, then the easement holder "is

liable for such damages without regard to negligence * * *." *Buras v. Shell Oil Co.*, 666 F.Supp. 919, 922 (S.D.Miss.1987) (citation omitted). *Accord Premier Petroleum Co. v. Box*, 255 S.W.2d 298, 299 (Tex.Civ.App.1953); 28A C.J.S. *Easements* § 182(b); 61 Am. Jur.2d, *Pipelines* § 39 ("[W]here, in consideration of the grant of a right of way, a pipeline company agrees to pay for any damages to property of the grantor arising from the exercise of the rights granted, the company is liable regardless of negligence.").

B & M claims that the route chosen by Great Lakes to access the pipeline easement to perform the repairs was unreasonable and therefore constituted a trespass. B & M bases this claim on its contention that the right-of-way agreement between the Berghs and Great Lakes does not define the location or manner of ingress and egress to the field and that "in the absence of any provision that defines the location or manner of ingress and egress, the rights of the parties must be exercised reasonably."

We conclude that the terms of the easement granted to Great Lakes by the right-of-way agreement between the Berghs and Great Lakes are clear and unambiguous. While the right-of-way does not specify any particular route that Great Lakes is required to use in gaining access to the pipeline, it does, in broad terms, provide Great Lakes the right of "ingress and egress to and from said right of way" so long as that "ingress" and "egress" is for a purpose contemplated by the right-of-way agreement. The right-of-way agreement also provides that Great Lakes "may temporarily use work space as needed during the construction, operation, maintenance, and removal of said pipeline * * *" and requires that Great Lakes pay for all damage done "to crops, timber, livestock and improvements" caused by Great Lakes' exercise of its rights under the agreement. We read the provisions of the right-of-way agreement between the Berghs and Great Lakes granting Great Lakes the right of "ingress and egress to and from the right of way" and to temporarily use work space as needed for "maintenance" of the pipeline in conjunction with Great Lakes' obligation to pay for damages caused by the exercise of its

rights under the right-of-way agreement as specifically defining all of Great Lakes' rights and responsibilities with respect to accessing the pipeline easement. Because the right-of-way agreement specifically defines Great Lakes' rights and responsibilities with respect to accessing the pipeline easement, we have no occasion to read a reasonableness requirement into the easement grant.

Based on the facts in the record, it appears that Great Lakes entered the field pursuant to the terms of the right-of-way agreement for the purpose of repairing the pipeline as permitted by that agreement. Thus, the only real issue for trial was the amount of damages Great Lakes was required to pay for damage it caused to the field and the sugar beet crop resulting from its exercise of its rights under the right-of-way agreement. Therefore, we conclude that the trial court was correct in excluding evidence on the reasonableness of the route Great Lakes utilized in accessing the pipeline easement to recoat the pipeline and in refusing to give the trespass issue to the jury.

Reversed and jury verdict reinstated.