Norbert SCHERGER, et al., Respondents,

v.

**NORTHERN NATURAL GAS COMPANY, petitioner, Appellant.**

No. CX–96–2319.

Supreme Court of Minnesota.

March 5, 1998.

Rehearing Denied April 7, 1998.

Eastlund, Solstad & Hutchinson, Ltd., Thomas F. Hutchinson, Daniel J. McGarry, Minneapolis, Joseph R. Cade, Savage, for Appellant.

Dunlap & Seeger, P.A., Kenneth R. Moen, Rochester, for Respondents.

## OPINION

PAGE, Justice.

█ Norbert and Delores Scherger (the "Schergers") petitioned the Dodge County District Court for a writ of mandamus[1] requiring Northern Natural Gas Co. ("Northern") to initiate condemnation proceedings in order to replace an existing Northern pipeline located within an easement on the Schergers' property. After cross-motions for summary judgment on stipulated facts, the district court denied the Schergers' motion seeking to require Northern to initiate condemnation proceedings and granted Northern's motion, which sought to have the Schergers' action dismissed. On appeal, the court of appeals reversed and remanded, holding that the location of Northern's replacement pipeline easement on the Schergers' property "must be within the scope of the easement as defined by construction of the original 1932 pipeline." We reverse and reinstate the summary judgment entered in favor of Northern.

The stipulated facts are as follows: Northern is a Delaware corporation engaged in the transportation of natural gas in interstate commerce through a pipeline system it owns, operates, and maintains. The Schergers are the owners of farm property located in Dodge County, Minnesota. On November 3, 1931, the Schergers' predecessors in title granted an easement in favor of Northern. Among other things, the agreement granting the easement gave Northern a "blanket" easement[2] over and through a portion of the Schergers' property "together with the right of ingress to and egress from said premises, for the purpose of constructing, inspecting, repairing, maintaining and replacing the property of the grantee located thereon, or the removal thereof, in whole or in part, at the will of the grantee." The easement agreement also provides for the payment of "the sum of Fifty Cents (50¢) per lineal rod * * * which is to be paid when and as the location of pipe lines over and through the lands hereinafter described shall be established, surveyed and measured * * *." In 1932, pursuant to this agreement, Northern constructed a natural gas pipeline through the Schergers' property, which it has operated and maintained since.

By letter dated October 26, 1995, Northern informed the Schergers that, pursuant to the 1931 easement agreement, it intended to "replace" the pipeline running through the Schergers' property. At that time, Northern tendered a check to the Schergers for $905 as compensation for installing the replacement pipeline.[3] The replacement pipeline was to run alongside the original pipeline, 50 feet away at its closest point and 300 feet at its most distant. The Schergers responded to Northern's letter by demanding, pursuant to Minn.Stat. § 300.045 (1996), "a definite and specific description of [Northern's] present gas pipeline easement on their property." Further, the Schergers demanded that a new easement agreement be negotiated and that if negotiations were unsuccessful, "then [Northern] should use [its] eminent domain powers" to acquire a new easement. In response, Northern indicated that it was willing to define the "present pipe line easement" across the property when construction of the replacement pipeline was completed, but asserted that the original easement agreement gave it the right to put the replacement pipeline anywhere on the property within the boundaries of the original easement grant.[4]

---

1. A writ of mandamus is an extraordinary remedy available to compel or restrain action by a judicial or quasi-judicial body, particularly where there exists no adequate remedy at law. *See* Minn.Stat. § 586.01 (1996); *McIntosh v. Davis*, 441 N.W.2d 115, 118 (Minn.1989). The essence of this action was the request for a judicial declaration as to the scope and validity of the 1931 agreement, and therefore was not appropriate for a writ of mandamus, however, we need not correct the procedure.

2. A "blanket" easement is an easement granted over a large defined area of property.

3. Although the original easement established that the Schergers were only to receive 50¢ per lineal rod, Northern, on its own initiative, paid the Schergers $5.00 per lineal rod.

4. While initially refusing to allow Northern on to their property to replace the pipeline prior to the resolution of this matter, the Schergers, by letter dated November 7, 1995, permitted Northern to proceed with construction of the replacement pipeline pending the outcome of judicial proceedings.

The Schergers petitioned for a writ of mandamus, seeking to require Northern to initiate condemnation proceedings in order to replace the original pipeline. In denying the Schergers' motion for summary judgment and granting Northern's motion, the district court found that "there is no ambiguity in the terms of the easement, and that the easement grants [Northern] the right to replace the pipeline." In addition, the district court found that Minn.Stat. § 300.045 was inapplicable. Importing an analysis from the Washington Court of Appeals, the Minnesota Court of Appeals reversed, holding that the location of the replacement pipeline must be within the scope of the easement "as defined by construction of the original 1932 pipeline." *Scherger v. Northern Natural Gas Co.*, 562 N.W.2d 328, 331 (Minn.App.1997) (citing *Mielke v. Yellowstone Pipeline Co.*, 73 Wash. App. 621, 870 P.2d 1005 (1994)). It remanded for a determination of whether or not Northern's replacement pipeline was "within the 'line of reasonable enjoyment' of the original easement * * * or within 'the minimum necessary for the safe conduct of [Northern's] business' " (quoting *Mielke* and Minn. Stat. § 300.045). While using the statute's language, the court of appeals declined to reach the issue of the applicability of Minn. Stat. § 300.045.

We are presented with two issues: (1) whether Northern, as grantee, under a blanket easement, has the right under the terms of the 1931 easement agreement to replace the pipeline constructed on the Schergers' property in 1932, with a new pipeline, at a different location within the easement; and (2) whether a demand under Minn.Stat. § 300.045 for a legal description of an older, existing easement legally restricts Northern's easement to the location of the original pipeline.

■ An easement is an interest in land possessed by another which entitles the grantee of the interest to a limited use or enjoyment of that land. *Minneapolis Athletic Club v. Cohler*, 287 Minn. 254, 258, 177 N.W.2d 786, 789 (1970). The extent of an easement depends entirely upon the construction of the terms of the agreement granting the easement. *Hwy. 7 Embers,*

*Inc. v. Northwestern Nat'l Bank,* 256 N.W.2d 271, 275 (Minn.1977). "When the terms of an easement grant are unclear, extrinsic evidence may be used to aid in the interpretation of the easement grant; however, when the language granting the easement is clear and unambiguous, the court's power to determine the extent of the easement granted is limited." *Bergh and Misson Farms, Inc. v. Great Lakes Transmission Co.*, 565 N.W.2d 23, 26 (Minn.1997). While ambiguities in contract agreements are resolved against the drafter, *see, e.g., Cherne Indus., Inc. v. Grounds & Assoc., Inc.*, 278 N.W.2d 81, 89 (Minn.1979), "[g]enerally, an easement grant is to be strictly construed against the grantor." *Bergh*, 565 N.W.2d at 26 (citing *Romanchuk v. Plotkin*, 215 Minn. 156, 160, 9 N.W.2d 421, 424 (1943)).

The Schergers contend that under the terms of the 1931 easement agreement, the parties intended that the location of the pipeline easement was to be "fixed" once the pipeline was installed within the boundaries of the blanket easement. In support of this contention, the Schergers note that the original pipeline has been undisturbed for over 60 years and that the easement agreement failed to include an inflationary escalator for additional lineal rods of pipeline. The Schergers also contend that Northern's interpretation of the easement agreement is absurd in that it would allow Northern to "fully occupy the farm, or critical portions of it, with pipelines at any time." Northern asserts that the plain language of the 1931 easement agreement, in essence, entitles it to replace the original pipeline by placing it anywhere within the blanket easement.

■ Our review of the parties' easement agreement leads us to conclude that the agreement is clear and unambiguous and that it supports Northern's contention that Northern may replace the original pipeline by placing it anywhere within the blanket easement granted by the agreement. The agreement states that Northern may "construct, maintain, and operate *pipe lines*" within the easement and gives Northern the "right of ingress to and egress from [the easement] for the purpose of constructing, inspecting, repairing, maintaining and *replac-*

*ing* " its pipelines. (Emphasis added.) This language, without question, contemplates that in the future additional and/or replacement pipelines could be constructed. We can find nothing in the easement agreement which limits or restricts in any way the location within the easement of any additional or replacement pipelines. Therefore, based on the plain language of the agreement, we reverse the court of appeals and hold that Northern is entitled to replace the original pipeline at any location within the grant of the 1931 blanket easement on the Schergers' property.

Next, we turn to the issue of the applicability of Minn.Stat. § 300.045 to these proceedings whereby, on demand, the Schergers sought to restrict or limit the pipeline location to its original path. The Schergers claim that Minn.Stat. § 300.045 prevents Northern from replacing its pipeline outside the confines of the easement "fixed" by the location of the original pipeline. The legislature enacted Minn.Stat. § 300.045 in 1973. Section 300.045 currently reads as follows:

> When public service corporations, including pipeline companies, acquire easements over private property by purchase, gift, or eminent domain proceedings, except temporary easements for construction, they must definitely and specifically describe the easement being acquired, and may not acquire an easement greater than the minimum necessary for the safe conduct of their business.

*Id.* This language has not been substantively altered over the years.[5] However, Minn. Stat. § 300.045 was amended in 1993 by the addition of language intended to protect landowners from marketability of title problems caused by easements covering large tracts of land. The 1993 amendment provides, in pertinent part:

> When a question arises as to the location of an easement across specific property and the recorded description of the ease-

ment does not include a definite and specific description of the easement by a method identified [herein], the public service corporation holding the easement shall, upon written request by the specific property owner, produce and record in a timely manner a definite and specific description using a method described [herein].

*Id.*

A plain reading of the language "when public service corporations * * * *acquire* easements" (emphasis added), contained in the first paragraph of Minn.Stat. § 300.045, leads inescapably to the conclusion that that provision of the statute applies to easements acquired after the statute's effective date. There simply is nothing in this statute to suggest that the legislature intended the language to apply to easements acquired before its enactment. Thus, because Northern acquired its easement over the Schergers' property before the enactment of the statute in 1973, neither provision of Minn.Stat. § 300.045 is applicable to this case.

Reversed and summary judgment for Northern reinstated.

GILBERT, J., took no part in consideration or decision of this case.

---

5. As originally enacted, Minn.Stat. § 300.045 read:

> Public service corporations, including pipeline companies, when acquiring easements over private property by purchase, gift or eminent domain proceedings, shall definitely and specifically describe the easement being acquired,

and shall not acquire an easement greater than the minimum necessary for the safe conduct of their business; provided that the foregoing shall not apply to a temporary easement for construction.

Minn.Stat. § 300.045 (1974).