# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A23-0441

Wayne Willenberg, et al.,
Respondents,

vs.

Charles Frye, et al.,
Appellants,

Karla Harrison, et al.,
Defendants.

**Filed February 5, 2024**
**Reversed**
**Johnson, Judge**

Hennepin County District Court
File No. 27-CV-20-13223

Paul C. Dworak, Naomi E.H. Martin, Newmark Storms Dworak L.L.C., Minneapolis, Minnesota (for respondents)

Erik F. Hansen, Elizabeth M. Cadem, Daniel R. Roach, Burns & Hansen, P.A., Minneapolis, Minnesota (for appellants)

Considered and decided by Johnson, Presiding Judge; Frisch, Judge; and Kirk, Judge.*

## SYLLABUS

The scope and extent of an express easement is determined by the instrument that created the easement. If the scope and extent of an easement is capable of exact

---

*Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

interpretation, the easement may not be relocated in a way that is contrary to the express terms of the instrument that created the easement.

## OPINION

**JOHNSON**, Judge

The owners of large lots in a residential subdivision wish to sell their properties to a real-estate development company, which has proposed to subdivide the large lots into smaller lots. The redevelopment plan would require the relocation of a roadway easement that was created by an agreement of the persons who owned property in the subdivision when it was platted. The owners of other large lots in the subdivision generally oppose the redevelopment plan and will not agree to the relocation of the private road.

Several property owners who wish to sell brought this action for a declaration that the private road may be relocated despite the absence of an agreement among all property owners. The district court granted the request for declaratory relief. The district court reasoned that the relocation would be a reasonable change that would permit redevelopment of the subdivision without significantly changing the benefits and burdens of the roadway easement. Some of the property owners who oppose the relocation of the private road have appealed from the district court's order and judgment. We conclude that the district court erred because well-established caselaw does not allow a district court to relocate an easement in a way that is contrary to the plain language of the instrument that created the easement. Therefore, we reverse.

## FACTS

The Troy Ridge subdivision is located in the city of Plymouth, west of interstate highway 494 and north of state highway 55. The subdivision originally consisted of 15 lots, labeled A through O, each of which originally was between three and five acres in size.

The subdivision has two interior, private roads, which are perpendicular to each other and intersect in approximately the middle of the subdivision. Vagabond Lane North runs north and south, and 56th Avenue Extension runs east and west. 56th Avenue Extension provides the only connection to a public road at the eastern edge of the subdivision, where it connects to Troy Lane North and 56th Avenue North at a three-way intersection.

The two private roads were created when the subdivision was platted in 1981. The owners of the 15 original large lots created roadway and utility easements by executing a document entitled "declaration of nonexclusive perpetual private roadway and utility and drainage easements." The following provisions are central to this appeal:

> Now therefore, [the named original owners] hereby grant, declare, create and establish the following:
>
> . . . .
>
> A nonexclusive perpetual private roadway easement over the land which is shown on and labeled roadway easement on Exhibit A attached hereto and made a part hereof, which roadway easement is an appurtenant easement to parcels A through O inclusive shown on said Exhibit A and that part of each parcel over which the said easement runs as shown on said Exhibit A is subject to the said easement.

3

The said roadway easement shall be used strictly for an easement of access of egress from and ingress to said parcels A through O inclusive. No owner shall obstruct or interfere whatsoever with the rights and privileges of other owners in the roadway easement *and nothing shall be planted, altered, constructed upon or removed by an owner from the roadway easement.* (Emphasis added.)

In 2018, the owners of two lots (B and C) sold their lots to a developer, which subdivided portions of those large lots into approximately 12 smaller lots. In February 2020, TEG Land Holdings LLC, a real-estate development company doing business as The Excelsior Group (hereinafter TEG), signed letters of intent with the owners of five large lots (H, I, J, M, and N). TEG initially proposed to subdivide those five large lots into approximately 84 smaller lots. In 2021, while this case was pending in the district court, one of the defendants expressed interest in selling her lot (F) to TEG. Thereafter, TEG incorporated lot F into its redevelopment plan.

The updated redevelopment plan would subdivide six large lots (F, H, I, J, M, and N) into approximately 94 smaller lots. To provide each new smaller lot with access to public roads, TEG has proposed to relocate, widen, and extend 56th Avenue Extension and to connect Vagabond Lane North to a new public road. An exhibit depicting the updated redevelopment plan is appended to this opinion.

Each of TEG's letter-of-intent agreements is contingent on TEG's ability to relocate the roadway and utility easements within the subdivision. Before TEG signed the first five letters of intent, the owners of the other ten large lots were asked to agree to the relocation of the road and utility easements. They did not unanimously agree.

4

In October 2020, the property owners who signed letters of intent with TEG and the owners of one additional lot[1] commenced this declaratory-judgment action against the owners of the other nine lots.[2] The plaintiffs sought a declaration that the portions of the roadway easement on their properties "may be reasonably relocated" and that all necessary utilities "may pass over, under, and through the relocated [roadway] easements." The plaintiffs alleged that "one or more of the [defendants] . . . were not motivated by concerns relating to the easements" but, rather, wished "to maintain the current low-density-development ambience."

Both plaintiffs and defendants filed dispositive motions, none of which were granted. In November 2020, defendants moved to dismiss the complaint for, among other reasons, failure to state a claim upon which relief may be granted. *See* Minn. R. Civ. P. 12.02(e). The district court denied the motion in March 2021. The following month, plaintiffs moved for judgment on the pleadings. *See* Minn. R. Civ. P. 12.03. The district court denied the motion in August 2021. Four months later, defendants moved for summary judgment. *See* Minn. R. Civ. P. 56.01. The district court denied the motion in April 2022.

---

[1]When the action was commenced, there were 11 plaintiffs with ownership interests in six large lots (E, H, I, J, M, and N). Two plaintiffs later sold lot E, which they jointly owned, but the buyers of that lot have not participated in this lawsuit. The nine remaining plaintiffs have appeared in this court as respondents on appeal.

[2]When the action was commenced, there were 17 defendants with ownership interests in nine large lots and two defendants with security interests in one of the nine lots. Plaintiffs later stipulated with the two defendants holding security interests that the two defendants did not object to the relief sought and need not appear. Eight defendants, who have ownership interests in four large lots (C, D, K, and L), have appeared in this court as appellants.

The case was tried to the district court on three days in June 2022. In December 2022, the district court filed a 19-page order with its findings of fact, conclusions of law, and order for judgment. In its conclusions of law, the district court applied section 4.8 of the Restatement (Third) of Property: Servitudes (2000), which allows an easement to be relocated in certain circumstances. The district court granted plaintiffs' request for relief by declaring that plaintiffs may relocate 56th Avenue Extension in the manner reflected in TEG's updated redevelopment plan so long as there is no expense to defendants. The district court administrator entered judgment in January 2023.

Defendants appeal. They make four arguments: (1) the district court erred by applying the Restatement on the ground that it is contrary to Minnesota law; (2) the district court erred by rejecting appellants' argument that there is no justiciable controversy; (3) the district court erred by making findings of fact concerning the requirements of the Restatement; and (4) the district court erred by conducting a trial and granting relief without joining an indispensable party. In light of our resolution of appellants' primary argument, we need not address their other arguments.[3]

---

[3]Appellants' counsel stated at oral argument that, if this court were to grant relief on their first argument, the court need not consider their remaining arguments. We are mindful that appellants' second argument, which concerns justiciability, may present a threshold issue. *See McCaughtry v. City of Red Wing*, 808 N.W.2d 331, 336-37 (Minn. 2011); *cf. Onvoy, Inc. v. ALLETE, Inc.*, 736 N.W.2d 611, 617-18 (Minn. 2007). The action was brought under the Declaratory Judgments Act, which authorizes courts "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." Minn. Stat. § 555.01 (2022). Under the act, "Any person interested under a deed, will, written contract, or other writings constituting a contract . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder." Minn. Stat. § 555.02 (2022). The supreme court has held that similar disputes concerning interests in real

**ISSUE**

Did the district court err by applying section 4.8 of the Restatement (Third) of Property: Servitudes (2000) and by granting respondents' request for declaratory relief?

**ANALYSIS**

As their primary argument, appellants argue that the district court erred by declaring that respondents may relocate the roadway easement for 56th Avenue Extension without the unanimous agreement of the owners of the 15 large lots, as required by the declaration of easements. Specifically, appellants argue that the district court erred by reasoning that section 4.8 of the Restatement (Third) of Property: Servitudes (2000) supplies the applicable rule of law and by applying it to the facts of this case.

**A.**

We begin by reviewing Minnesota caselaw concerning the modification of an easement.

An easement is, in short, "an interest in land in the possession of another which entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists." *Minneapolis Athletic Club v. Cohler*, 177 N.W.2d 786, 789 (Minn. 1970). A longer definition is as follows:

> An easement is an interest in land in the possession of another which (a) entitles the owner of such interest to a limited use or enjoyment of the land in which the interest exists; (b) entitles him to protection as against third persons from interference in

---

property are justiciable. *See In re Turners Crossroad Development Co.*, 277 N.W.2d 364, 372 (Minn. 1979); *Holiday Acres No. 3 v. Midwest Federal Sav. & Loan Ass'n*, 271 N.W.2d 445, 446-49 (Minn. 1978). For the reasons stated in those opinions, we are satisfied that this case presents a justiciable controversy.

7

such use or enjoyment; (c) is not subject to the will of the possessor of the land; (d) is not a normal incident of the possession of any land possessed by the owner of the interest, and (e) is capable of creation by conveyance.

*Larson v. State*, 790 N.W.2d 700, 703-04 (Minn. 2010).

"The extent of an easement depends entirely upon the construction of the terms of the agreement granting the easement." *Scherger v. Northern Nat. Gas Co.*, 575 N.W.2d 578, 580 (Minn. 1998); *see also Bergh & Misson Farms, Inc. v. Great Lakes Transmission Co.*, 565 N.W.2d 23, 26 (Minn. 1997). "The written instrument creating the easement . . . defines the scope and extent of the interest in land," *i.e.*, its "specific width, length, and location." *Larson v. State*, 790 N.W.2d at 704 (citing 7 David A. Thomas, *Thompson on Real Property* § 60.04(c)(1)(i) (2d ed. 2006), and *Highway 7 Embers, Inc. v. Northwestern Nat'l Bank*, 256 N.W.2d 271, 275 (Minn. 1977)).

"It is well settled that the extent of an easement should not be enlarged by legal construction beyond the objects originally contemplated or expressly agreed upon by the parties." *Minneapolis Athletic Club*, 177 N.W.2d at 789-90; *see also Larson v. Amundson*, 414 N.W.2d 413, 417 (Minn. App. 1987). If the written description of an easement is "capable of exact interpretation," a court may not change the easement. *Highway 7 Embers*, 256 N.W.2d at 277. A court "is not free to create any reasonable easement when the agreement does not permit such flexibility." *Id.* Rather, "the equitable powers of the court are called into play only when the description of the easement is sufficiently vague as to permit the inference that any reasonable easement was intended." *Id.*

**B.**

In both pre-trial motion proceedings and at trial, respondents urged the district court to apply section 4.8 of the Restatement (Third) of Property: Servitudes (2000), which states as follows:

> Except where the location and dimensions are determined by the instrument or circumstances surrounding creation of a servitude, they are determined as follows:
>
> (1) The owner of the servient estate has the right within a reasonable time to specify a location that is reasonably suited to carry out the purpose of the servitude.
>
> (2) The dimensions are those reasonably necessary for enjoyment of the servitude.
>
> (3) Unless expressly denied by the terms of an easement, as defined in § 1.2, the owner of the servient estate is entitled to make reasonable changes in the location or dimensions of an easement, at the servient owner's expense, to permit normal use or development of the servient estate, but only if the changes do not
>
> > (a) significantly lessen the utility of the easement,
> >
> > (b) increase the burdens on the owner of the easement in its use and enjoyment, or
> >
> > (c) frustrate the purpose for which the easement was created.

Respondents first cited the Restatement in opposition to appellants' motion to dismiss for failure to state a claim. In doing so, respondents argued, "There is a trend in American property law away from a rigid and often harsh application of the general rule prohibiting unilateral relocation toward an equity-based analysis . . . ." That trend,

9

respondents argued, is reflected in section 4.8 of the Restatement. Respondents relied on *M.P.M. Builders, LLC v. Dwyer*, 809 N.E.2d 1053 (Mass. 2004), in which the Massachusetts Supreme Judicial Court adopted and applied section 4.8 of the Restatement in a dispute concerning whether the owner of a servient estate could relocate an easement without the consent of the easement holder. *See id.* at 1056-57.

The district court was persuaded by respondents' argument. In its order denying appellants' motion to dismiss, the district court discussed the Massachusetts *Dwyer* opinion and stated that "the Restatement approach embodies the modern rule and is consistent with" *Sabin v. Rea*, 223 N.W. 151 (Minn. 1929). The district court summarized the applicable law by stating, "Under Minnesota law, the owner of a servient estate who can show compliance with section 4.8 of the Restatement may make reasonable changes to an easement over her property, including by reasonably relocating it."

In denying appellants' subsequent motion for summary judgment, the district court rejected appellants' request to "reconsider its decision to apply" section 4.8 of the Restatement. The district court stated that it would not "revisit its prior analysis . . . except to say that it has not changed its position since its [prior] order." Similarly, in its conclusions of law in the order filed after trial, the district court stated that it had "previously ruled that the Restatement (Third) of Property: Servitudes § 4.8(3) is the applicable law to this case."

In this court, appellants argue in their principal brief that the district court "erred as a matter of law" by applying section 4.8 of the Restatement "because the easements declaration specifically determines the location and disallows alteration of the roadway

10

easement without unanimous approval." Appellants argue in the alternative that, even if section 4.8 were adopted, it would "not allow relocation of the private roads in this case" because the easements declaration "specifically determines the location and disallows alteration of the roadway easement without unanimous approval," due to the exceptions in the first clause of section 4.8 and the first clause of subsection (3) of section 4.8. At oral argument, appellants' counsel clarified that they do not challenge the premise that section 4.8 of the Restatement should be adopted. Rather, appellants' counsel asserted at oral argument that the district court erred by applying section 4.8 despite the exceptions.

**C.**

To resolve the parties' dispute, we first must identify the applicable law. Because an appellate court gives no deference to a district court with respect to the determination of the applicable law, we apply a *de novo* standard of review. *See Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 581 (Minn. 2010). We are not bound by the parties' agreement or shared assumption about the applicable law because we must ascertain the applicable law according to pre-existing primary authorities. *See State v. Beganovic*, 991 N.W.2d 638, 644 n.2 (Minn. 2023); *State v. Vasko*, 889 N.W.2d 551, 556 (Minn. 2017); *State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990).

Under subsection (3) of section 4.8 of the Restatement—the provision applied by the district court—"the owner of the servient estate is entitled to make reasonable changes in the location or dimensions of an easement" in certain circumstances. The general rule of subsection (3) is inconsistent with the above-described Minnesota caselaw, which does not allow either the owner of a servient estate or a court to unilaterally change the location

11

or dimensions of an easement whose location was fixed with specificity by the instrument that created the easement. *See Larson v. State*, 790 N.W.2d at 704; *Scherger*, 575 N.W.2d at 580; *Bergh & Misson Farms*, 565 N.W.2d at 26; *Highway 7 Embers*, 256 N.W.2d at 277; *Minneapolis Athletic Club*, 177 N.W.2d at 789-90; *Larson v. Amundson*, 414 N.W.2d at 417.

The inconsistency between subsection (3) of section 4.8 and Minnesota law is foretold by a comment to section 4.8, which states that subsection (3) "rejects the rule espoused by the weight of authority in the United States—that the servient owner may not unilaterally relocate an easement." Restatement (Third) of Property: Servitudes § 4.8, cmt. f (2000). Since section 4.8 was adopted in 1998, the highest courts of five states have declined to adopt it on the ground that it is inconsistent with that state's caselaw.[4]

---

[4]*See Herren v. Pettengill*, 538 S.E.2d 735, 736-37 (Ga. 2000); *Town of Ellettsville v. DeSpirito*, 111 N.E.3d 987, 992-94 (Ind. 2018); *Stowell v. Andrews*, 194 A.3d 953, 964-66 (N.H. 2018); *Sweezey v. Neel*, 904 A.2d 1050, 1057-58 (Vt. 2006); *AKG Real Estate, LLC v. Kosterman*, 717 N.W.2d 835, 844-47 (Wis. 2006). We note that the highest courts of a similar number of states have adopted section 4.8. *See Roaring Fork Club, L.P. v. St. Jude's Co.*, 36 P.3d 1229, 1236-37 (Colo. 2001); *M.P.M. Builders, LLC v. Dwyer*, 809 N.E.2d 1053, 1057-59 (Mass. 2004); *St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 191 (Nev. 2009); *Lewis v. Young*, 705 N.E.2d 649, 653-54 (N.Y. 1998) (adopting tentative draft of section 4.8); *Stanga v. Husman*, 694 N.W.2d 716, 718-19 (S.D. 2005); *cf. Roy v. Woodstock Cmty. Tr., Inc.*, 94 A.3d 530, 537-40 (Vt. 2014) (applying Restatement only to subsurface easements and distinguishing *Sweezey*). In three of those cases, however, the easement at issue did not determine its location and scope with specificity. *See Roaring Fork Club*, 36 P.3d at 1236-37; *Lewis*, 705 N.E.2d at 653-54; *Stanga*, 694 N.W.2d at 718-19. In one of those cases, the court adopted section 4.8 but did not modify the easement because of the exception in its first clause. *See St. James Village*, 210 P.3d at 191. As far as our research reveals, the highest court of only one state has adopted and applied section 4.8 in the manner in which the district court applied it in this case. *See M.P.M. Builders*, 809 N.E.2d at 1057-58.

The district court reasoned, in part, that section 4.8 of the Restatement "is consistent with" the supreme court's 1929 opinion in *Sabin v. Rea*. But *Sabin* is not on point. Unlike the easement in this case, the location of the easement in *Sabin* was not determined by an agreement of the parties. The supreme court expressly acknowledged that important fact in stating the rule of law applicable to that case: "Where a party grants an easement *and does not definitely designate or locate it* the grantee may make the location, and if it is reasonable his selection cannot be questioned." 223 N.W. at 151 (emphasis added). The supreme court has cited *Sabin* in only two subsequent opinions, both of which involved easements that were not determined with specificity in a written instrument. *See Farnes v. Lane*, 161 N.W.2d 297, 300 n.7 (Minn. 1968); *Ingelson v. Olson*, 272 N.W. 270, 274 (Minn. 1937). In the earlier of those two opinions, the supreme court cited *Sabin* for the proposition that, "If the grantor omits to exercise this right [to locate a roadway], the grantee may make the selection, and his selection will be upheld unless he has abused the right." *Ingelson*, 272 N.W. at 274. In the latter opinion, the supreme court cited *Sabin* in a footnote for general principles concerning the interpretation of ambiguous writings. *Farnes*, 161 N.W.2d at 300 n.7. *Sabin* cannot be read to say that the owner of a servient estate may unilaterally relocate an easement whose location was specifically determined by the instrument that created the easement.

Respondents contend that the district court's application of section 4.8 of the Restatement is justified by *Thomas v. Mrkonich*, 78 N.W.2d 386 (Minn. 1956), a case that was not cited by the district court. Again, *Thomas* is not on point. There was no express agreement for an easement in *Thomas*. *See* 78 N.W.2d at 387-89. The trial court resolved

the dispute by applying the law of adverse possession. *Id.* at 388. The supreme court affirmed on the same grounds. *Id.* at 389. In doing so, the supreme court merely referred to caselaw concerning the alteration of easements. *Id.* The supreme court said nothing about an easement whose location is fixed with specificity by the instrument that created the easement. *See id.* at 387-89. *Thomas* cannot be read to say that the owner of a servient estate may unilaterally relocate an easement whose location was specifically determined by the instrument that created the easement.

Thus, the district court erred by applying section 4.8 of the Restatement (Third) of Property: Servitudes (2000), which is inconsistent with the applicable Minnesota caselaw.

**D.**

Appellants argue that, even if section 4.8 were adopted, it would not allow relocation of the easement in this case because of the exceptions in the first clause of the section and the first clause of subsection 3.

Section 4.8 begins by stating, "Except where the location and dimensions are determined by the instrument or circumstances surrounding creation of a servitude, . . . ." Restatement (Third) of Property: Servitudes § 4.8 (2000). Consistent with the first clause, a comment to section 4.8 states that "parties are free to determine the location and dimensions of a servitude," that "their intent to do so . . . should be given effect," and that section 4.8 applies "only . . . to supply terms omitted by the parties in creating a servitude." Restatement (Third) of Property: Servitudes § 4.8 cmt. a (2000).

It is undisputed that the 1981 easements declaration determined with specificity the locations and widths of the roadway easements. The easements declaration did so by

14

stating that the roadway easement is "over the land" labeled in an attached exhibit, which depicts the location of the roadway easements in relation to the original 15 large lots. In addition, the easements declaration, as amended, sets the width of the roadway easement at 24 feet wide, which is narrower than the roadways in TEG's updated redevelopment plan. Because "the location and dimensions" of the 56th Avenue Extension roadway easement "are determined" by the easements declaration, the exception in the first clause of section 4.8 is triggered. *See* Restatement (Third) of Property: Servitudes § 4.8 (2000). For that reason, section 4.8 would not support the district court's conclusion given the facts of this case, even if it were adopted in Minnesota.

Furthermore, subsection (3) of section 4.8 begins by stating, "Unless expressly denied by the terms of an easement, . . . the owner of the servient estate is entitled to make reasonable changes in the location or dimensions of an easement," so long as certain purposes are served and certain requirements are satisfied. Restatement (Third) of Property: Servitudes § 4.8(3) (2000). Consistent with this clause, a comment states that the rule stated in subsection (3) "applies unless expressly negated by the easement instrument." Restatement (Third) of Property: Servitudes § 4.8 cmt. f (2000).

The easements declaration states, "No owner shall obstruct or interfere whatsoever with the rights and privileges of other owners in the roadway easement *and nothing shall be planted, altered, constructed upon or removed by an owner from the roadway easement.*" (Emphasis added.) Because the easements declaration expressly states that the 56th Avenue Extension roadway easement may not be "altered," the exception in the first clause of subsection (3) is triggered. *See* Restatement (Third) of Property: Servitudes § 4.8

15

(2000). Accordingly, subsection (3) of section 4.8 would not support the district court's conclusion given the facts of this case, even if section 4.8 were adopted in Minnesota.

In sum, given the plain language of the easements declaration, the location and scope of the 56th Avenue Extension roadway easement may not be changed without the unanimous agreement of the property owners who are bound by the easements declaration. *See Larson v. State*, 790 N.W.2d at 704; *Scherger*, 575 N.W.2d at 580; *Bergh & Misson Farms*, 565 N.W.2d at 26; *Highway 7 Embers*, 256 N.W.2d at 277; *Minneapolis Athletic Club*, 177 N.W.2d at 789-90; *Larson v. Amundson*, 414 N.W.2d at 417.

## DECISION

The district court erred by granting respondents' request for declaratory relief.

**Reversed.**

# APPENDIX



Updated redevelopment plan,
as depicted in Exhibit A to district court order dated December 21, 2022.