**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1166**

Jeffrey Apitz, et al.,
Appellants,

vs.

Terry Hopkins, et al.,
Respondents.

**Filed May 18, 2015
Reversed and remanded
Peterson, Judge**

Itasca County District Court
File No. 31-CV-13-1044

Matthew H. Hanka, Fryberger, Buchanan, Smith & Frederick, P.A., Duluth, Minnesota (for appellants)

Brian C. Bengtson, Lano, O'Toole & Bengtson, Ltd., Grand Rapids, Minnesota (for respondents)

Considered and decided by Worke, Presiding Judge; Peterson, Judge; and Connolly, Judge.

**S Y L L A B U S**

A deed that grants an "exclusive easement for ingress, egress, and utility purposes" is ambiguous, and the interpretation of the easement grant is a question of fact.

**O P I N I O N**

**PETERSON**, Judge

This appeal is from a summary judgment granted to respondent-owners of a dominant estate in a declaratory judgment action brought by appellant-owners of the

servient estate to determine the scope of an "exclusive easement for ingress, egress and utility purposes." Because the language granting the easement is ambiguous and the interpretation of the easement grant presents a question of fact, we reverse and remand.

## FACTS

Appellants Jeffrey and Joanne Apitz own property in Itasca County that is described as Lot 2, Block 1, Bluffs of Shoal Lake (Lot 2). Respondents Terry and Kelly Hopkins own an adjoining lot, described as Lot 3, Block 1, Bluffs of Shoal Lake (Lot 3). Both lots were formerly owned by Allen and Christine Lehn, who sold Lot 3 to respondents in 2006 and sold Lot 2 to Michal Nash in 2007. When the Lehns sold Lot 3 in 2006, they agreed to convey an access easement across Lot 2, but they failed to do so. To correct this error, when the Lehns sold Lot 2 to Nash in 2007, they reserved an easement to themselves, which they then conveyed to respondents by quitclaim deed. In the deed that the Lehns used to convey Lot 2 to Nash, the following clauses were used to create the easement:

> Reserving unto the Grantors [the Lehns], their heirs and assigns, an exclusive easement for ingress, egress and utility purposes over, under and across the East 33 feet of Lot 2, Block 1, Bluffs of Shoal Lake for the benefit of Lot 3, Block 1, Bluffs of Shoal Lake.

> The maintenance of said easement shall be the sole responsibility of the owner(s) of Lot 3, Block 1, Bluffs of Shoal Lake.

Julienne Brauer purchased Lot 2 from Michal Nash in 2008, and appellants purchased Lot 2 from Brauer in 2012.

2

After appellants purchased Lot 2, respondents attempted to exclude appellants from the easement property by erecting a fence and posting "private drive" signs. Respondents also removed trees from the easement property. Appellants brought an action against respondents in district court seeking a declaratory judgment that respondents could not exclude them from reasonable use of the easement property, requesting an injunction to prohibit respondents from using the easement property in excess of the use granted by the easement, and asking for damages in trespass.

The district court granted partial summary judgment to respondents based on its interpretation of the easement language as a matter of law. The district court construed the term "exclusive easement" as the right to exclude all others, including the "right to exclude [appellants] from the [easement property]." The parties stipulated to dismissal of all claims "other than the declaratory judgment claims," and this appeal followed.

## ISSUE

Does an "exclusive easement for ingress, egress and utility purposes" grant the easement owner the right to exclude the owners of the servient estate from the easement property?

## ANALYSIS

Upon review of a summary judgment, the appellate court "must determine whether there are any genuine issues of material fact and whether a party is entitled to judgment as a matter of law." *Citizens State Bank v. Raven Trading Partners, Inc.*, 786 N.W.2d 274, 277 (Minn. 2010). The legal effect of an unambiguous written document may be decided by the district court as a question of law and is subject to de novo review. *See*

*BankCherokee v. Insignia Dev., LLC*, 779 N.W.2d 896, 903 (Minn. App. 2010) (stating that the interpretation of an unambiguous agreement is a question of law subject to de novo review), *review denied* (Minn. May 18, 2010); *see also Scherger v. N. Natural Gas Co.*, 575 N.W.2d 578, 580-81 (Minn. 1998) (applying de novo review to issue of whether easement agreement was ambiguous).  But if the terms of an instrument of conveyance are ambiguous, interpretation of the instrument is a question of fact, and summary judgment is inappropriate.  *See Denelsbeck v. Wells Fargo & Co.*, 666 N.W.2d 339, 346 (Minn. 2003) ("[T]he interpretation of an ambiguous contract is a question of fact. . . ."); *Donnay v. Boulware*, 275 Minn. 37, 45, 144 N.W.2d 711, 716 (1966) ("It is generally recognized that summary judgment is not appropriate when the terms of a contract are at issue and any of its provisions are ambiguous or unclear.").

An easement is "an interest in land possessed by another which entitles the grantee of the interest to a limited use or enjoyment of that land."  *Larson v. State*, 790 N.W.2d 700, 704 (Minn. 2010) (quoting *Scherger*, 575 N.W.2d at 580).  An "access easement" is "[a]n easement allowing one or more persons to travel across another's land to get to a nearby location, such as a road."  *Black's Law Dictionary* 586 (9th ed. 2009).  "Generally, the grant of an easement over land does not preclude the grantor from using the land in a manner not unreasonably interfering with the special use for which the easement was acquired."  *Minneapolis Athletic Club v. Cohler*, 287 Minn. 254, 258, 177 N.W.2d 786, 789 (1970).  The easement holder acquires only the "particular privileges" granted by the easement.  *Id.*

"When an easement is by express grant, its extent depends entirely upon the construction of the terms of the grant." *Highway 7 Embers, Inc. v. Nw. Nat'l Bank*, 256 N.W.2d 271, 275 (Minn. 1977); *see Larson*, 790 N.W.2d at 704 ("The written instrument creating the easement . . . defines the scope and extent of the interest in land."); *Bergh & Misson Farms, Inc. v. Great Lakes Transmission Co.*, 565 N.W.2d 23, 26 (Minn. 1997) ("[T]he extent of an easement should not be enlarged by legal construction beyond the objects originally contemplated or expressly agreed upon by the parties." (quotation omitted)); *Lindberg v. Fasching*, 667 N.W.2d 481, 487 (Minn. App. 2003) (stating that "[t]he express grant creating [an] easement is a contract," and its scope depends entirely upon the construction of the terms of the easement agreement), *review denied* (Minn. Nov. 18, 2003). "When the terms of an easement grant are unclear, extrinsic evidence may be used to aid in the interpretation of the easement grant; however, when the language granting the easement is clear and unambiguous, the court's power to determine the extent of the easement granted is limited." *Bergh*, 565 N.W.2d at 26.

The district court ruled as a matter of law that the term "exclusive easement" means that respondents have the right to exclude all others, including appellants, from the easement property. The meaning of "exclusive easement" has not been addressed in Minnesota law.

Although it is not binding precedent for this court, *Latham v. Garner*, 673 P.2d 1048 (Idaho 1983) is instructive on the meaning of "exclusive" when used to describe an easement. *See* Jon W. Bruce & James W. Ely, Jr., *The Law of Easements and Licenses in Land*, § 1:28, at 1-71 (2012) (recognizing *Latham* as instructive and noting states'

5

reliance on its analysis). In *Latham*, the Idaho Supreme Court considered the meaning of an access easement granted to the easement holders "exclusively for their use, and unto their successors and assigns forever." 673 P.2d at 1051-52. The *Latham* court initially observed that "an exclusive easement is an unusual interest in land [that] has been said to amount to almost a conveyance of the fee," but such easements are "not generally favored by the courts," and the intention to create such an easement must be conveyed by "clear indication." *Id.* at 1050-51. After noting that "[t]he mere use of the word 'exclusive' in creating an easement is not . . . sufficient to preclude use by the owner of the servient estate," the *Latham* court found that the exclusivity language was ambiguous and subject to multiple interpretations and ruled that the lower court erred by ruling as a matter of law that the easement was exclusive even as to the owner of the servient estate. *Id.* at 1051-52. The *Latham* court stated:

> The instrument could be interpreted as (1) the grant of an easement right of way to the grantee . . . to the exclusion of all others, except the grantor; or (2) the grant of an easement right of way excluding all others, including the grantor; or, (3) as the grant of a fee simple estate to the grantee. Thus, the instrument is reasonably subject to conflicting interpretations and as such is ambiguous.

*Id.* at 1052. The court reversed the lower court's determination "that the easement was granted for the exclusive use and benefit of the [easement holders]," *Id*. at 1049, and remanded so that the lower court could consider "extrinsic evidence of the circumstances and intentions of the original parties to the easement." *Id.* at 1052-53.

As in *Latham*, the easement language at issue here is ambiguous and subject to multiple meanings. Among other interpretations, "an exclusive easement for ingress,

6

egress and utility purposes" could mean that only respondents have access to the easement property and even appellants are excluded, or it could mean that only respondents may use the easement for "ingress, egress and utility purposes," but appellants retain the right to use the easement property in any manner that does not unreasonably interfere with respondents' use of the easement property for these purposes.

Because "exclusive easement" is ambiguous, the district court erred by granting respondents summary judgment based on its interpretation of the easement as a matter of law. We therefore reverse the summary judgment and remand to permit the district court to make a factual determination regarding the intent of the original parties to the easement when the Lehns sold Lot 2 to Nash and reserved the easement to themselves. *See Denelsbeck*, 666 N.W.2d at 346 (stating that a provision is ambiguous if, based exclusively on its language, it is subject to more than one meaning). In making this determination, the district court must consider the original parties' intent as demonstrated by the language used to create the easement and by any extrinsic evidence that demonstrates their intent. *See Bergh*, 565 N.W.2d at 26 (permitting the district court to consider extrinsic evidence when terms of an easement are ambiguous). Extrinsic evidence may consist of "facts peculiar to the particular easement involved on the assumption that the grantor intended to permit a use of the easement which was reasonable under the circumstances and the grantee expected to enjoy the use to the fullest extent consistent with its purpose." *Farnes v. Lane*, 281 Minn. 222, 225-26, 161 N.W.2d 297, 300, (1968); *see Latham*, 673 P.2d 1052-53 (stating that remand to

determine scope of exclusive easement should include consideration of "extrinsic evidence of the circumstances and intentions of the original parties to the easement").

## D E C I S I O N

Because "exclusive easement for ingress, egress and utility purposes" is ambiguous and the interpretation of the easement grant is a question of fact, the district court erred by granting respondents summary judgment.

**Reversed and remanded.**