*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SONYA M. BEGGS, Individually and as Personal Representative of the ESTATE OF JAMES L. BEGGS,

UNPUBLISHED
June 23, 2022

Plaintiff/Counterdefendant-Appellee,

v

STEVEN P. FREED,

No. 354797
Oceana Circuit Court
LC No. 19-013888-CH

Defendant/Counterplaintiff-Appellant.

Before: K. F. KELLY, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant/counterplaintiff Steven P. Freed appeals as of right the trial court's order granting summary disposition to plaintiff/counterdefendant, Sonya M. Beggs individually and as personal representative of the Estate of James L. Beggs,[1] and permanently enjoining defendant "from entry upon and/or use of [the easement, the north twenty feet of defendant's property] for ingress, egress, utilities, or any other purpose." On appeal, defendant argues that the trial court erred by (1) finding that the term "exclusive easement" is ambiguous, requiring parol evidence for its interpretation; (2) applying extrinsic evidence to its interpretation of the easement contract; and (3) granting summary disposition to plaintiff because a genuine dispute of material fact should have precluded a grant of summary disposition. We conclude that the easement contract unambiguously permits plaintiff to exclude all others—including defendant—from using the easement for ingress and egress, but that plaintiff's exclusive easement for ingress and egress does not include the right to construct a fence, a fence not being incident or necessary to the use of a driveway. As such, we vacate the trial court's order granting summary disposition to plaintiff and remand for further proceedings consistent with this opinion.

---

[1] James L. Beggs passed away while this appeal was pending and his estate was substituted as a party.

## I. UNDERLYING FACTS

The parties own adjacent parcels of land in Hart Township. The only road access to plaintiff's parcel is by an easement over defendant's parcel. The easement covers the north twenty feet of defendant's parcel and a public road runs north to south directly to the west of defendant's parcel; the easement connects plaintiff's property to the road there.

The parties' predecessors in interest[2] engaged in a protracted property dispute in the early 1990s, which they eventually resolved through a settlement agreement. The Oceana Circuit Court memorialized the settlement agreement in a March 16, 1994 order. The order required defendant's predecessors to grant plaintiff's predecessors an "exclusive easement" and install a culvert in a creek behind their home in order "to use that area as their access" to their property. Plaintiff's predecessors, for their part, were to have "sole responsibility for the maintenance of" and "exclusive control over the use of" the easement. They were also to build a gate at the easement's west end "in order to keep out trespassers." Soon after receiving the court order, the parties drafted an easement contract, which states in relevant part:

> WITNESSETH, that the Grantors, for and in consideration of the consideration hereinafter set forth, the receipt of which is hereby acknowledged, do by these presents grant and convey unto Allen Brimmer and Tom Brimmer, their heirs and assigns, an exclusive easement 20 feet wide, over, and across the following described property [legal description of property follows] for purposes of ingress and egress along the North 20 feet of the above described property.

> This easement is given pursuant to a settlement agreement placed before the Court in the matter of Anthony Brimmer et al v. Tom Brimmer et al, Oceana County Circuit Court File 93-4543-CH, and in consideration thereof, including within said consideration, the Grantees' agreement to construct and place a gate at the West end of said easement, to exclude uninvited guests or random parties from trespassing thereon, said gate to be completed within a reasonable time after weather permits.

The parties' predecessors cooperated in building a fence on the easement's southern border, separating it from the unburdened portion of defendant's land. The fence had some intentional gaps to allow defendant's predecessors to access the land and, according to defendant, the fence's purpose was to establish what portion of the land plaintiff's predecessors were responsible for maintaining and to keep them from accessing the remainder of what is now defendant's land. Plaintiff and defendant have disagreed over the easement's scope, specifically the meaning of "exclusive easement," since at least 2003. In that year, defendant's predecessors sought to use the easement to access what is now defendant's land, but before the parties had actually litigated the

---

[2] Plaintiff's predecessors in interest were Allen Brimmer and Tom Brimmer. Defendant's predecessors in interest were Anthony Brimmer and Marjorie Brimmer. For ease of reference, we will refer to Allen and Thomas as "plaintiff's predecessors" and to Anthony and Marjorie as "defendant's predecessors" throughout this opinion. Neither party disputes the other's privity of contract with the easement grantors and grantees.

issue, they built an alternative driveway just south of the easement instead. Since then, defendant has allegedly encroached upon the easement by removing its gate and fence, allowing utilities companies to pass over it, blocking it with telephone poles, plowing snow onto it, and uprooting its shrubbery. For her own part, plaintiff has allegedly allowed the easement to become so overgrown that it caused flooding to the unburdened portion of defendant's land.

In 2019, defendant allegedly removed a fence that plaintiff's predecessors had installed on the easement. After plaintiff reinstalled it, defendant allegedly removed it again. This prompted plaintiff to file suit, in which she alleged that defendant, through the invasive actions described earlier, had violated her exclusive use of the easement. Plaintiff sought declaratory judgment and a permanent injunction to the effect that they were legally empowered to deny defendant any and all access to the easement. Defendant denied the allegations in the complaint and filed a counterclaim, alleging that plaintiff's use of the easement exceeded the easement contract's terms. Both parties filed motions for summary disposition, focusing on whether the easement contract's use of the term "exclusive easement" allowed plaintiff to exclude even defendant from the easement. The trial court concluded that the easement contract was ambiguous, but that extrinsic evidence established that plaintiff had complete control over the easement. Consequently, the trial court held that "[t]he evidence and testimony makes it clear that the intent of the parties to the easement was to take the unusual step to create a truly exclusive easement."[3] Accordingly, the trial court granted summary disposition to plaintiff. This appeal followed.

## II. STANDARD OF REVIEW

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a complaint and is reviewed de novo. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Barnes v 21st Century Premier Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347120); slip op at 4. Indeed, summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Patrick*, 322 Mich App at 605. "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "Only the substantively admissible evidence actually proffered may be considered." *1300 LaFayette East Coop, Inc v Savoy*, 284 Mich App 522, 525; 773 NW2d 57 (2009) (quotation marks and citation omitted). "Circumstantial evidence can be sufficient to establish a genuine issue of material fact, but mere conjecture or speculation is insufficient." *McNeill-Marks v Midmichigan Med Ctr-Gratiot*, 316 Mich App 1, 16; 891 NW2d 528 (2016).

---

[3] The trial court did not clarify what it meant by "a truly exclusive easement."

Additionally, "questions involving the proper interpretation of a contract or the legal effect of a contractual clause are also reviewed de novo." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). This standard applies to express grants of easements. *Little v Kin*, 468 Mich 699, 700; 664 NW2d 749 (2003). Finally, "[t]he applicability of legal doctrines such as res judicata and collateral estoppel are questions of law to be reviewed de novo." *Allen Park Retirees Ass'n v Allen Park*, 329 Mich App 430, 443; 942 NW2d 618 (2019).

## III. ANALYSIS

Plaintiff and defendant each argue that the easement contract is unambiguous, but draw different conclusions as to what those unambiguous terms mean. Plaintiff argues that the easement contract unambiguously gives her and her alone complete control over the easement; defendant argues that he can still access the land. We hold that the easement contract's "exclusive easement" language is unambiguous and created an exclusive easement that allows plaintiff to prevent defendant from using the land burdened by the easement for purposes of ingress and egress. We further hold that an exclusive easement for purposes of ingress and egress (i.e., coming and going) does not carry with it the right to construct a fence. Finally, collateral estoppel does not bar defendant's claims.

### A. PRINCIPLES OF CONTRACT INTERPRETATION

"The language of an express easement is interpreted according to rules similar to those used for the interpretation of contracts." *Wiggins v City of Burton*, 291 Mich App 532, 551; 805 NW2d 517 (2011). The "interpretation of written contracts consists in ascertaining the meaning of the parties, as expressed in the terms of the writing, according to the rules of grammar." *Pendill v Maas*, 97 Mich 215, 218; 56 NW 597 (1893). This Court interprets the words of a contract according to "their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory*, 473 Mich at 464. The plain and ordinary meaning may be determined with the help of a dictionary. *Auto Owners Ins Co v Seils*, 310 Mich App 132, 145; 871 NW2d 530 (2015). This Court must read contracts as a whole. *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 447; 886 NW2d 445 (2015). It "cannot simply ignore portions of a contract in order to avoid a finding of ambiguity or in order to declare an ambiguity. Instead, contracts must be construed so as to give effect to every word or phrase as far as practicable." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 467; 663 NW2d 447 (2003) (quotation marks and citation omitted). Thus, this Court must "avoid an interpretation that would render any part of the contract surplusage or nugatory." *Id.* at 468.

### B. INCORPORATION OF THE 1994 COURT ORDER BY REFERENCE

The parties dispute whether the easement contract incorporates the 1994 court order by reference. We hold that it does.

When a contract incorporates another document by reference, the two writings are read together. *Forge v Smith*, 458 Mich 198, 208 n 21; 580 NW2d 876 (1998). A contract incorporates a writing by reference when the reference "show[s] that it is made for the purpose of making such writing a part of the contract." *Whittlesey v Herbrand Co*, 217 Mich 625, 628; 187 NW 279 (1922). "But if the reference [is] made for a particular purpose, expressed in the contract, it becomes part

of it only for that purpose." *Id.* See also *Forge*, 458 Mich at 208 n 21 (citation omitted) ("Although neither physical attachment nor specific language is necessary to incorporate a document by reference, the incorporating instrument must clearly evidence an intent that the writing be made part of the contract.").

Here, the easement contract incorporates the 1994 court order. The easement contract was written "pursuant to" and "in consideration [of]," a "settlement agreement placed before the Court in the matter of <u>Anthony Brimmer et al v Tom Brimmer et al</u>, Oceana Circuit Court File 93-4543-CH." The 1994 court order was the order of settlement and dismissal in that matter. Indeed, the 1994 court order states:

> The parties having appeared before the Court on Wednesday, March 2, 1994, and having indicated a settlement of all issues in this case and the parties having placed the settlement on the record, and the Court being fully informed of the settlement,
>
> IT IS ORDERED . . . .

The 1994 court order required defendant's predecessors to write the easement contract "to fully effectuate the intent of this Order."

The easement contract references the settlement in Oceana Circuit Court File 93-4543-CH. The trial court in that case memorialized the settlement through the 1994 court order and, consequently, the 1994 court order is the best evidence available to this Court of the settlement in that case.[4] Accordingly, the easement contract incorporated the 1994 court order by reference to the settlement. Thus, the 1994 court order is part of the easement contract.

## C. WHETHER THE EASEMENT CONTRACT IS AMBIGUOUS

A "contract is ambiguous when its provisions are capable of conflicting interpretations." *Klapp*, 468 Mich at 467 (quotation marks and citation omitted). It is not enough that reasonable people could disagree about a contract's interpretation; an interpretation is ambiguous only if it is "*equally* susceptible to more than a single meaning." *Toll Northville LTD v Twp of Northville*, 480 Mich 6, 15 n 2; 743 NW2d 902 (2008). "[A]mbiguity is a finding of last resort" that "is to be reached only after all other conventional means of interpretation have been applied and found

---

[4] We note that neither party disputes the terms of the 1994 settlement nor argues that the 1994 court order did not accurately reflect the terms of the settlement in that case. As such, we decline to address the potential issue of whether the easement contract's reference to the settlement actually references a different portion of the trial court proceedings in Oceana Circuit Court File 93-4543-CH when the settlement was placed on the record instead of the 1994 court order in which the trial court memorialized the settlement. That issue has not been presented to this court and, therefore, is abandoned. See *Cheesman v Williams*, 311 Mich App 147, 161; 874 NW2d 385 (2015) ("An appellant may not merely announce a position then leave it to this Court to discover and rationalize the basis for the appellant's claims; nor may an appellant give an issue only cursory treatment with little or no citation of authority.").

wanting." *Kendzierski v Macomb Co*, 503 Mich 296, 311; 931 NW2d 604 (2019) (quotation marks and citation omitted). Accordingly, this Court "will not create ambiguity where the terms of the contract are clear." *Id*. (Quotation marks and citation omitted). "However, if the contractual language is ambiguous, extrinsic evidence can be presented to determine the intent of the parties." *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). In an instance in which "the contract language is unclear or susceptible to multiple meanings, interpretation becomes a question of fact." *Port Huron Ed Ass'n, MEA/NEA v Port Huron Area Sch Dist*, 452 Mich 309, 323; 550 NW2d 228 (1996). Finally, when it comes to interpreting exclusive easements, the Restatement of Property, 3d, Servitudes provides a useful analytical framework: "The degree of exclusivity of the rights conferred by an easement or profit is highly variable and includes two aspects: *who* may be excluded and the *uses* or area from which they may be excluded." 1 Restatement Property, 3d, Servitudes, § 1.2, comment c (emphasis added). We will now address each aspect in turn.

## 1. SCOPE OF EXCLUSIVE EASEMENTS: WHO MAY BE EXCLUDED

Defendant argues that plaintiff cannot exclude him from using the easement. We disagree. Michigan law establishes that the holder of an exclusive easement may exclude *all* others from using it, even the owner of the servient estate.

This Court defined the term "exclusive easement" in *Penrose v McCullough*, 308 Mich App 145, 151-152; 862 NW2d 674 (2014). In *Penrose*, this Court affirmed that a landowner, having granted an exclusive easement to one party, could not subsequently grant an easement over the same parcel to another party. *Id.* at 146. The *Penrose* Court defined "exclusive easement" as follows:

> [A]n exclusive easement is an unusual interest in land; it has been said to amount to almost a conveyance of the fee. The grant of an exclusive easement conveys unfettered rights to the owner of the easement to use that easement for purposes specified in the grant to the exclusion of all others . . . . [E]xclusive easements are not generally favored by the courts. Nevertheless, if parties agree to do so, exclusive easements can be created. [*Id*. at 151-152, quoting *Latham v Garner*, 105 Idaho 854; 673 P2d 1048 (1983)[5] (first alteration added).]

Consequently, it was impossible for the owner of the servient estate to grant an easement to a subsequent party, because "only [the easement holder] . . . [was] entitled to use the easement." *Id*. at 152. Thus, according to *Penrose*, the easement holder alone has the right to use the easement and may even exclude the grantor. *Id*. at 151-152. Nevertheless, the easement holder's use of the land is still limited to the specified purpose of the easement. *Id*.

---

[5] *Latham* is looked to by several treatises and jurisdictions as a seminal case on exclusive easements. See, e.g., 1 Restatement Property, 3d, Servitudes, § 4.9, comment d (discussing the servient owner's entitlement to use an easement); Bruce & Ely, *The Law of Easements and Licenses in Land,* § 1:28 (2021); *Apitz v Hopkins*, 863 NW2d 437, 440 (Minn App, 2015); *Ottinger v Stooksbury*, 206 SW3d 73 (Tenn App, 2006).

The *Penrose* Court's interpretation that only the easement holder may use an "exclusive easement" is consistent with Black's Law Dictionary and the Restatement of Property, 3d, Servitudes. Black's Law Dictionary defines an "exclusive easement" as "an easement that the holder has the sole right to use." *Black's Law Dictionary* (11th ed). In contrast, it defines a "nonexclusive" or "common" easement as "an easement allowing the servient landowner to share in the benefit of the easement." *Id.* Similarly, as explained in the Restatement of Property, 3d, Servitudes, "[t]he term 'exclusive' used in the context of servitudes means the right to exclude others" and can even allow the easement holder to exclude the servient owner. 1 Restatement Property, 3d, Servitudes, § 1.2, comment c. See also *id.* (explaining that the holder of the most exclusive type of easement "has the right to exclude everyone, including the servient owner, from making any use of the land within the easement boundaries"); 1 Restatement Property, 3d, Servitudes, § 4.9, comment d ("The servient owner is generally entitled to make use of the easement unless the easement was intended to be exclusive.").

The *Penrose* Court's interpretation of "exclusive easement" also is consistent with the law governing another type of servitude: a profit à prendre. Easements and profits à prendre are very similar types of servitudes. *Evans v Holloway Sand & Gravel, Inc*, 106 Mich App 70, 78; 308 NW2d 440 (1981). The only difference is that "[a]n easement is the right to use the land of another for a specified purpose," *Schadewald v Brule*, 225 Mich App 26, 35; 570 NW2d 788 (1997), whereas a profit à prendre "is the right to acquire, by severance or removal from another's land, something previously constituting part of the land," *Hubscher & Son, Inc v Storey*, 228 Mich App 478, 483; 578 NW2d 701 (1998). A common example of a profit à prendre is the right to hunt. See, e.g., *St Helen Shooting Club v Mogle*, 234 Mich 60, 68; 207 NW 915 (1926). A person who conveys hunting rights through an exclusive grant forfeits them completely. "An owner of lands may convey exclusive hunting rights thereon to others, so as to bar himself from hunting on his own premises." *Id.* at 66 (citation omitted). The exclusive right to hunt "is good against all the world and can be maintained even against the owner of the soil." *Id.* at 68 (citing Thompson on Real Property, § 234). If a grantor of exclusive hunting rights loses his right to hunt, it follows that the grantor of an exclusive easement should lose the right to use the servient estate.

Here, the easement contract granted plaintiff's predecessors in interest an "exclusive easement . . . for purposes of ingress and egress." The term "exclusive easement" would be ambiguous only if it were equally amenable to differing interpretations. Yet the term is not equally subject to the interpretation that plaintiff may exclude defendant as it is to the interpretation that they may not. It is far more reasonable to read the term as permitting plaintiff to exclude defendant than it is to a reading prohibiting such action. Indeed, Michigan law clearly establishes that a contract for an "exclusive easement" allows the easement holder to exclude all others—including the owner of the servient estate—from the easement. Consequently, the term "exclusive easement" in the easement contract is unambiguous, permitting plaintiff to exclude defendant from accessing the easement "for purposes of ingress and egress."

This conclusion resolves the first aspect of the analysis: *whom* the exclusive easement excludes. But the second question still remains—to *what uses* does the exclusive easement apply. In the context of this case, that requires that we determine whether the scope of the easement contract permits plaintiff to build a fence on the land burdened by the easement.

## 2. SCOPE OF EXCLUSIVE EASEMENTS: WHAT USES ARE PERMITTED

Defendant argues that plaintiff's exclusive easement, which is only for ingress and egress, does not grant her the right to construct a fence on the easement, because doing so would exceed the easement's scope. We hold that the exclusive easement here is, as a matter of law, limited to its stated purpose of ingress and egress.

"An easement is the right to use the land of another for a specified purpose." *Schadewald*, 225 Mich App at 35. "It is an established principle that the conveyance of an easement gives to the grantee all such rights as are incident or necessary to the reasonable and proper enjoyment of the easement." *Blackhawk Dev Corp v Vill of Dexter*, 473 Mich 33, 41-42; 700 NW2d 364 (2005) (quotation marks and citation omitted). Additionally, "the use exercised by the holders of the easement must be reasonably necessary and convenient to the proper enjoyment of the easement, with as little burden as possible to the fee owner of the land." *Id*. at 42 (quotation marks, brackets, and citation omitted). A fee owner retains all uses of the burdened land that do not interfere with the easement holder's rights. *Smith v Straughn*, 331 Mich App 209, 216; 952 NW2d 521 (2020). "[W]hile the easement holder's rights are ultimately paramount . . . to those of the owner of the soil, the latter's rights are subordinate only to the extent stated in the easement grant." *Blackhawk Dev Corp*, 473 Mich at 41 (quotation marks and citations omitted; alteration in original). Indeed, the easement holder "cannot prevent another, even a trespasser, from using the land, if his use does not impede the free exercise of the right of passage." *Murphy Chair Co v Am Radiator Co*, 172 Mich 14, 28; 137 NW 791 (1912). Finally, " '[w]hat may be considered a proper and reasonable use by the owner of the fee, as distinguished from an unreasonable and improper use, as well as what may be necessary to [the easement holder's] use and enjoyment, are questions of fact to be determined by the trial court or jury.' " *Smith*, 331 Mich App at 216 (quoting *Harvey v Crane*, 85 Mich 316, 322-323; 48 NW 582 (1891) (second alteration in original)).

The easement contract grants plaintiff an easement for "ingress and egress," but it does not define those terms. As this Court recently explained in *Bayberry Group, Inc v Crystal Beach Condo Assn*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 349378); slip op at 7:

> The relevant documents do not define ingress and egress, so this Court must consult a dictionary to determine what these terms commonly mean. *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 526; 697 NW2d 895 (2005). "Ingress" is defined as "the power or liberty of entrance or access," and "egress" is defined as "the action or right of going or coming out." *Merriam-Webster's Collegiate Dictionary* (11th ed). An "ingress-and-egress easement" is an easement that grants "[t]he right to use land to enter and leave another's property." *Black's Law Dictionary* (10th ed).

Consequently, the easement contract unambiguously granted plaintiff the exclusive right to use the land burdened by the easement to enter and exit her property. It also specifically allowed her to build a gate on the easement's western edge. But it did not address whether she could build a fence separating the land burdened by the easement from the remainder of defendant's land.

This Court has previously held that an ingress-egress easement granting access to a lakeshore did not allow the easement holder to build a dock. *Dyball v Lennox*, 260 Mich App 698, 708; 680 NW2d 522 (2004). In *Dyball*, the defendant owned an easement "for the purpose of

ingress and egress" that ran from the dominant estate, across the plaintiffs' land, and down to the lakeshore. *Id.* at 700. For well over twenty years, the easement-holder had maintained and stored a boat at a dock where the easement met the shore. *Id.* The trial court considered extrinsic evidence, finding that the original grantor and grantee of the easement intended it to encompass the right to build a dock. *Id.* at 702-703. On appeal, the plaintiff argued that the trial court had erred in admitting parol evidence, because a grant of "ingress and egress" unambiguously forbade activity other than entering and leaving. *Id.* at 699. This Court agreed, holding that "[t]he terms ingress and egress to the water's edge do not show an intent to grant a right to construct and maintain a dock, a right typically reserved to riparian owners." *Id.* at 708. The easement did not grant any riparian rights to the easement holder and, therefore, the easement holder did not have the necessary riparian rights to construct and maintain a dock. *Id.* Consequently, the dock exceeded the easement's scope. *Id.*

Here, the exclusive easement for purposes of ingress and egress does not also imply an associated right to build a fence. In *Dyball*, the landowner was able to force the easement holder to desist from ulterior uses of the burdened land, because the uses fell outside that easement's permissible scope. It did not affect the analysis that the easement holder had engaged in such uses for over twenty years. Here, the easement did not expressly allow plaintiff's predecessors to build a fence, but it did allow them to build a gate.

As explained earlier, when interpreting a contract this Court must "avoid an interpretation that would render any part of the contract surplusage or nugatory." *Klapp*, 468 Mich at 468. The easement contract explicitly allowed plaintiff's predecessors to build a gate, but it made no mention of a fence. If the easement contract impliedly permitted plaintiff's predecessors to make alterations to the land, such as a gate and a fence, based on its general terms granting them an "exclusive easement . . . for ingress and egress" then it would not have needed to specify that the plaintiff's predecessors could build a gate. As such, the express mention of a gate and failure to address a fence instead strongly suggests that the easement contract does not permit plaintiff to build a fence on the land burdened by the easement. The easement contract's failure to address a fence, however, could be overcome if a fence was "incident or necessary to the reasonable and proper enjoyment of the easement." See *Blackhawk Dev Corp*, 473 Mich at 41-42 (quotation marks and citation omitted).

It cannot be said that a fence running alongside a driveway is "incident or necessary" to the easement's purpose of ingress and egress (i.e., coming and going). Plaintiff may access her property, and exit her property, whether or not a fence, running parallel to the driveway, is present. We therefore conclude that the grant of an exclusive easement for purposes of ingress and egress does not carry with it a right of plaintiff to construct the disputed fence. The language of the easement being clear and unambiguous regarding what rights were conveyed, we need not resort to extrinsic evidence to resolve this question.

## D. COLLATERAL ESTOPPEL

Plaintiff argues, as an alternative ground for affirmance, that collateral estoppel bars defendant from challenging her rights under the easement contract. We disagree.

As explained by our Supreme Court in *Monat v State Farm Ins Co*, 469 Mich 679, 682-684; 677 NW2d 843 (2004):

> Generally, for collateral estoppel to apply three elements must be satisfied: (1) "a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment"; (2) "the same parties must have had a full [and fair] opportunity to litigate the issue"; and (3) "there must be mutuality of estoppel." [Alteration in original; footnote and citations omitted.]

"A decision is final when all appeals have been exhausted or when the time available for an appeal has passed." *Bryan v JPMorgan Chase Bank*, 304 Mich App 708, 716; 848 NW2d 482 (2014) (citation omitted). Additionally, in determining whether the parties in the first action had a full and fair opportunity to litigate an issue, a court should consider numerous factors, including: (1) whether the party against whom estoppel is asserted had a legal right to appeal; (2) whether the issue is one of law and the two actions are substantially unrelated or an intervening change merits a new determination; (3) whether a new determination is merited by differences in the procedures; (4) whether the party against whom estoppel is asserted had a significantly heavier burden of persuasion as to the issue in the first action; and (5) whether there is a clear and convincing need for a new determination because of the effect on the interests of the public or nonparties, the lack of foreseeability that the issue would arise in a later proceeding, or the party against whom estoppel is asserted did not have adequate opportunity or incentive to obtain a full and fair adjudication in the first action. *Monat*, 469 Mich at 683-684 n 2. Finally, "where collateral estoppel is being asserted defensively against a party who has already had a full and fair opportunity to litigate the issue, mutuality is not required." *Id.* at 680-681.

Plaintiff argues that collateral estoppel bars defendant's claims because the easement contract was created at the conclusion of litigation between their predecessors in interest in 1994. She is correct about the circumstances surrounding the easement contract's creation, but incorrect that collateral estoppel bars defendant's claims. There is no evidence that in the 1994 litigation, the parties litigated the issues which are before this Court in this case, i.e. the identities of the persons whom the easement contract allows plaintiff to exclude from the easement and the scope of plaintiff's permissible use of the easement. Consequently, the trial court in 1994 was not asked to resolve a question of fact essential to the judgment in this case and, therefore, collateral estoppel cannot bar defendant's claim in this case. See *id.* at 682-684.

## IV. CONCLUSION

For the reasons stated in this opinion, we vacate the trial court's order granting summary disposition to plaintiff and remand to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola